## Chicago Savings Bank v. Anna S. Block.

### Gen. No. 12,323.

1. CHECK—*when bank liable for money paid upon raised.* A bank cannot charge the account of a depositor with money paid upon raised checks.

2. Checks—*burden of showing that payment of, by the bank, was proper.* The burden is upon a bank to show that checks which it has paid and charged to a depositor were the due and proper checks of such depositor, and were properly paid by it.

Action of assumpsit. Appeal from the Circuit Court of Cook County; the Hon. RICHARD W. CLIFFORD, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1905. Affirmed. Opinion filed April 10, 1906.

WILLIAM E. O'NEILL, for appellant.

LYMAN, BUSBY & LYMAN, for appellee; HAYES McKINNEY, of counsel.

MR. JUSTICE FREEMAN delivered the opinion of the court.

Appellee sued upon the common counts to recover a balance of money deposited with the appellant bank. The defense was that the disputed balance of $190 had been paid out by the bank in due course of business on checks signed by appellee. It is claimed the checks so paid had been stolen from the mails, changed as to dates, amounts and payees, and were negligently and improperly paid by the bank subsequent to such alterations. A jury found in favor of appellee. Judgment was entered accordingly, and the bank appeals.

There is evidence tending to show that appellee deposited with appellant during the first ten months of 1903 sums aggregating $4,837.98. Upon the 6th of February, 1903, a check for $125, apparently drawn by appellee upon the appellant bank, was presented to and paid by the bank, and on the 9th of the same month another check for $65 was likewise so presented and paid. The first of these checks, as paid, appears to be dated February 3, 1903, and directs

the bank to "Pay to the order of cash $125, one hundred and twenty-five dollars." It is endorsed "G. W. Tupper." The apparent date of the second check is February 6, 1903, and it reads, "Pay to the order of cash $65, sixty-five dollars." It bears the endorsement "John B. Martin." Both checks bear the genuine signature of appellee, "Anna Scott Block." There is evidence that upon the 2nd of February, 1903, appellee and her husband were in Philadelphia, and that then and there she signed two checks, each bearing that date. The first of these was drawn for the sum of $130.12, payable to William M. Gatiss; the second for $3, payable to Willard E. Smith. These checks were enclosed in envelopes addressed to the respective payees at different places in Michigan and dropped in the mail chute of the hotel that same day, February 2, 1903. Later in the month it was learned from Gatiss and Smith that neither of them had received his check. Thereupon about the 28th of February appellee's husband went to the appellant bank, saw the cashier and told him that the said checks sent from Philadelphia were reported as not having been received. The cashier sent for an envelope apparently containing appellee's paid checks then remaining in the bank's possession, looked them over and said that the checks in question had not been received or paid by the bank. He was told not to pay them if presented, and that new checks would be sent in their place. Later, in June following, when appellee's account was written up, the two missing checks in the form as sent from Philadelphia were not among those returned to her from the bank as paid, but in their stead were found the two checks in controversy in their alleged altered form. These were taken to the bank and shown to the cashier, who was told that they must have been stolen from the mail and altered, that they were not in the form in which they were drawn and signed by appellee, that she was out that amount, and would hold the bank responsible for the payment. Subsequently appellee was informed that the bank would not refund the money. The check book containing the stubs of the checks as claimed to

have been originally drawn was introduced in evidence and tends to show that the check for $130.12 was originally drawn to cover two bills, and was made payable to the order of W. M. Gatiss, "for horse, feed, sleigh and harness," and "lumber for house;" and that the check for $3 was drawn to the order of W. E. Smith, "for recording deeds."

It is contended in behalf of appellant that appellee was negligent in not notifying the bank sooner than was done, that the checks had been changed. The evidence does not sustain such contention. The bank's attention was called to the matter as soon as appellee was informed the checks mailed in Philadelphia had not reached their destination. The cashier looked over the paid checks which were in an envelope, the contents of which he apparently did not show to appellee's husband and agent who was inquiring in her behalf. Had he done so, the alleged alteration would in all likelihood have been then discovered. The alleged spurious checks had already been paid, and there is no evidence the bank was injured, even by the delay which it may be was caused by its own failure to then exhibit the checks. In June following appellee's checks paid up to that time were returned to her, and she discovered the two checks in controversy, which were at once reported to the appellant's cashier with the information that they were probably the lost checks, stolen from the mails and altered and that the U. S. postal authorities were investigating the matter. The question of appellee's diligence was submitted to the jury by an instruction given at request of appellant, and the verdict must be deemed to have settled it in appellee's favor.

The relation of the bank to appellee, a depositor, was that of debtor and creditor, but the bank could not lawfully pay out any of appellee's deposit except in conformity to her directions. If the checks in controversy were materially altered without her knowledge and consent, after being signed by her and leaving her possession, they were no longer her checks and the bank had no authority, actual or implied, to pay them. Appellant had what appellee had

not, the opportunity of preventing the successful consummation of the fraud by taking precaution to identify the parties presenting the checks at its counter for payment, and ascertaining whether they were authorized by appellee to receive the money. The bank is responsible for its own want of vigilance in not detecting the alteration or withholding payment until it had taken the means necessary for its own protection. The fact that the checks in this case appear to have been altered so skillfully as even now to make detection difficult does not relieve appellant from responsibility. It is enough that it has paid out a portion of appellee's money in its hands on deposit without her authority, and has nevertheless undertaken to charge the amounts so paid to her account. This it cannot be permitted to do. Cases in conformity with these views are Graves v. Am. Exch. Bank, 17 N. Y. 205; Tolman v. American National Bank, 52 Lawyers Rep. Annotated 877–888; Critten v. Chemical Nat. Bank, 171 N. Y. 219–224.

It is argued that there is no evidence binding upon appellant showing the original payees were not the persons who in fact received the money upon the altered checks. If they had been the same persons, the uncontradicted evidence is nevertheless that the amounts paid by appellant were not the amounts for which appellee drew the checks originally, and which she had authorized the bank to pay. The burden of proof is upon appellant to show that it has disbursed the money which it seeks to charge against appellee's deposit, upon proper authority from her. In Cushman v. Ill. Starch Co., 79 Ill. 281–282, it was said of a certificate of deposit issued by a bank that "it was an acknowledgment they had the sum of money specified in the certificate in their bank, and the burden of proof was upon them to show they had in some way discharged that liability." So also in Critten v. Chemical Nat. Bank, *supra*, it is held (p. 224) that when the fraudulent alteration of checks is proved, the liability of the bank for their amount is made out and it is incumbent upon the bank "to establish affirmatively negligence on the plaintiff's part to re-

lieve it from the consequence of its fault or misfortune in paying forged orders."

We are unable to agree with appellant's contention that the evidence fails to sustain the verdict, and finding no material error in the record, the judgment must be affirmed.

*Affirmed.*