[S. F. No. 4986.   In Bank.—June 8, 1912.]

## OTIS ELEVATOR COMPANY (a Corporation), Respondent, v. FIRST NATIONAL BANK OF SAN FRANCISCO (a Corporation), Appellant.

BANK—ACTION FOR BALANCE OF DEPOSIT—DEFENSE OF PAYMENT ON CHECKS FRAUDULENTLY RAISED BY AGENT OF DEPOSITOR—PLEADING FACTS CONSTITUTING ESTOPPEL.—In an action by a depositor against a bank to recover an alleged balance on deposit, liability for which the bank denied on the ground that it had paid out the amount claimed on certain checks fraudulently raised by an employee of the depositor, and that the payments were made under such circumstances as to justify it in charging the same to the account of the depositor, evidence in support of such defense may be considered on appeal without any averments in the answer of acts of negligence on the part of the depositor which might operate to estop it from denying its responsibility for the checks in the form in which they were presented for payment.

ID.—LIABILITY OF BANK FOR PAYMENT OF FORGED CHECKS—MODIFICATION OF GENERAL RULE—ESTOPPEL OF DEPOSITOR FROM DENYING REGULARITY OF PAYMENT.—The general rule, that as between a bank and its customers the payment of forged or altered checks by the bank is made at its peril and cannot be charged against the depositor's account, is not applied unqualifiedly, and is modified to the extent that when some negligent act on the part of the customer has contributed to the payment by the bank, or the facts in a particular case surrounding the forgery of a check and its presentation and payment are of such character as call for the application thereto of some general principle of law or equity, they may be relied on by the bank as an estoppel against the customer precluding him from denying the correctness of the payment.

ID.—AGENCY—LIABILITY OF PRINCIPAL FOR FRAUD OF AGENT.—A principal is liable to third parties not only for the negligence of its agents in the transaction of the business of the agency, but likewise for the frauds, torts, or other wrongful acts committed by such agent in and as part of the transaction of such business.

ID.—LIABILITY FOR CHECKS ALTERED BY AGENT OF DEPOSITOR—PRESENTATION AND PAYMENT BY AGENT IN COURSE OF HIS EMPLOYMENT.—An agent of the depositor, who during a period of several years had been intrusted by his principal with the duty of filling out in his own handwriting the body of checks drawn payable to "cash" or "bearer," and, after the same were signed, of presenting them to and having them cashed at the depositary bank, was acting within the direct scope and course of his employment, so far as such bank

is concerned, in presenting for payment and cashing at the bank either a check, the body of which was in his handwriting, and which had been originally drawn to the order of a third person for a small amount, but had been changed by him so as to make it payable to bearer for a much larger amount, or a check, similarly written, which had been originally drawn payable to bearer for a specified amount and had been raised by him to a larger amount.

ID.—CHECKS REGULAR IN APPEARANCE—LOSS FALLING ON DEPOSITOR.—Where there was nothing on the face, or in the appearance of such checks to raise suspicion as to their validity, the loss occurring by reason of their payment by the bank to the agent of the depositor guilty of the fraud must fall upon the depositor and not upon the bank.

ID.—RULES OF AGENCY APPLICABLE TO RELATION OF BANK AND CUSTOMER.—There is no such particular relation existing between a bank and its customers that denies the application of the general rules of agency which apply in other relations, and when an agent of a customer of a bank, while acting in the course of the employment with which the customer has intrusted him, commits a fraud upon the bank, the same rule of responsibility for the fraudulent conduct of the agent is applicable, as applies to other relations between parties where the acts of the agent in the course of his employment are involved.

APPEAL from an order of the Superior Court of the City and County of San Francisco refusing a new trial. John Hunt, Judge.

The facts are stated in the opinion of the court.

Percy E. Towne, T. C. Van Ness, Cushing & Cushing, Lloyd & Wood, and R. H. Lloyd, for Appellant.

J. A. Stephens, Charles W. Slack, and Curtis Hillyer, for Respondent.

LORIGAN, J.—The complaint in this action alleged that on January 20, 1904, plaintiff had on deposit in the bank of defendant a sum in excess of $6,496.50; that on said day plaintiff drew its checks against this deposit for two amounts, $5,496.50 and $1,000, respectively; that both of said checks on presentation were dishonored; that two days later the check of plaintiff for $75.55 was paid by the bank; and that when this last check was paid there was a balance due plain-

tiff from defendant of $6,496.50 on said account for which amount plaintiff asked a judgment.

The defendant by answer admitted the dishonor of the two checks drawn on January 20, 1904, and the payment of the last check, but denied that on January 20, 1904, plaintiff's balance exceeded $75.55.

The facts in the case are not disputed. Plaintiff had for many years been a depositor with defendant. Samuel Burger was the general manager of the plaintiff, W. Noble Dickinson, Jr., was his assistant, and H. T. Bliss was cashier and accountant in San Francisco of plaintiff. It was, and had long been, the custom of the plaintiff to use its own forms in drawing checks against its account in the bank of defendant. These were printed on white ledger paper and not upon "safety paper" of the kind used by defendant in the blank checkbooks ordinarily furnished to its customers. Plaintiff possessed a certain protective perforating device by which the figures corresponding to the amount to be drawn by a check could be cut in the paper. This device—termed a safety device—was sometimes, but not always, used in the preparation of its checks. Burger was the only person in San Francisco authorized to sign checks for the plaintiff. Bliss had custody of the check-book of plaintiff and the protective device referred to. He had been in the employ of plaintiff for many years. The usual practice followed by the plaintiff in drawing checks was for Bliss to fill in the checks in his own handwriting and take them to Burger for signature who upon signing them intrusted Bliss with the duty of punching the amount for which the checks were drawn by use of the safety device. Hooper, the paying teller of defendant, had been acquainted with Bliss in connection with the business of plaintiff for fully ten years, and knew him to be the cashier and bookkeeper of plaintiff. It was customary for Bliss to go to the bank with checks of plaintiff signed by Burger and drawn, either to the order of W. Noble Dickinson Jr. and indorsed by him, or payable to "cash" or "bearer," and cash such checks. This was a frequent and usual thing, and Hooper had been accustomed to honor such checks. He was thoroughly familiar with the handwriting of Bliss in the body of checks and with his signature as likewise with the signature of Burger. In August, 1903, as Burger was about to

leave the city to be absent for some days, Bliss at the request of Burger made out and Burger signed, about twenty checks payable to W. Noble Dickinson Jr. The purpose of leaving these blank checks was to enable Dickinson to pay the creditors of plaintiff and carry on the business during the absence of Burger. When signed these checks were not dated nor were any amounts written therein. At the same time that these blank checks payable to Dickinson were signed by Burger Bliss also presented to him for his signature some fifty checks for various amounts and made payable to various persons. All these checks were in the check-book, not having been separated therefrom; were all completely filled out as to the payees and amounts in the handwriting of Bliss but the amounts of none of them had been punched in these checks and their dates were stamped with a rubber stamp. In this condition these checks were signed by Burger. One of them complete in form when presented to Burger and signed by him, was made payable to "A Merle Co." and was for the sum of $3.50. This particular check after its signature by Burger and while subsequently in the custody of Bliss was "raised" by him. By means of a rubber eraser he erased a portion of the date on the check and with a rubber stamp stamped a different date thereon. With chemicals he erased the name of the payee "A Merle Co." and in its place wrote the words "bearer" as the payee thereof. By the same process he obliterated the amount for which the check was originally drawn and in lieu thereof wrote in and made it payable for five thousand five hundred dollars. Then by means of the safety device he perforated the check to indicate that it was drawn for that amount. Having effected these changes he indorsed the check and presented it to Hooper, the paying teller of the defendant, who paid it.

It does not appear when this forgery on the part of Bliss occurred, whether before or after Burger had left the city, but that fact is of no consequence.

Subsequent to the departure of Burger, however, Bliss took one of the blank checks which Burger had signed and left with him and which was made payable to the order of Dickinson and filled it out in his own handwriting for the sum of four hundred dollars. In the body of this check Bliss had placed the figures "400" after the dollar sign thereon and

also had written therein the words "four hundred." In do-
ing so, however, he had left a sufficient space between the
figure "4" and the dollar sign to permit the insertion of an-
other figure therein. Likewise he had left a sufficient space
between the written words "four" and "hundred" so as to
permit the writing therein of other letters. In this condition
Bliss presented the check to Dickinson who wrote his signa-
ture on the back and returned it to Bliss. The latter then
inserted the figure "1" between the dollar sign and the fig-
ure "400" and wrote in the word "teen" after the word
"four" and preceding "hundred" in the space which had
been left between these latter words. When this check was
presented to Dickinson and indorsed by him it had not been
punched with the safety device but after its indorsement Bliss
cut upon it therewith the figures "$1400." This check was
indorsed by Bliss and presented to Hooper, the paying teller
of the defendant, who cashed it. No erasures whatever were
made in this latter check, the alterations consisting solely
of filling in the blank spaces which were in the check when
it was indorsed by Dickinson. There was nothing about
either of these checks to warrant an inference that there was
any negligence on the part of Hooper in not discovering that
the checks had been raised or otherwise altered, and nothing
upon which to base an inference that the appellant was in
any degree negligent in paying to Bliss the amounts appar-
ently called for by these checks. Besides being in the fa-
miliar handwriting of Bliss, both checks were apparently
genuine and valid for the full amounts called for thereby.
It was not until Bliss failed to return from his vacation and
suspicion was aroused in the mind of Burger as to the reason
for his disappearance that an investigation disclosed the fact
that he had thus tampered with both these checks and escaped
with the proceeds of his crime.

The findings of the trial court were in accord with the alle-
gations of the complaint and judgment given the plaintiff for
the full amount claimed thereunder. This is an appeal from
an order denying defendant's motion for a new trial, and the
point made is that the evidence was insufficient to justify the
decision of the trial court.

The position of the appellant under the evidence is that it
had paid out on the raised checks above referred to a sum

equivalent to the amount of the two large checks mentioned in the complaint and which it dishonored, and that the payment of these amounts was made under such circumstances as to justify appellant in charging the same to the account of respondent.

The particular claim of the appellant in this respect is, that the trial court should have found that the respondent, through its agent Burger, was guilty of negligence as to the check raised by Bliss to five thousand five hundred dollars on account of using for the preparation of its checks a kind of paper from which, by means of chemicals, the original writing thereon could be readily obliterated and in signing the checks in question without the original amounts thereof having been stamped therein with the safety device; and as to the check raised to fourteen hundred dollars, that Dickinson, the other agent of respondent, was likewise guilty of negligence in indorsing that check with spaces left unfilled and without the amount thereof having been cut therein with the safety device; and further that the acts of Bliss, the agent of respondent, in altering and presenting both checks must be imputed to the respondent.

It is insisted preliminarily by the respondent that as the appellant did not specially plead any negligence on the part of respondent with reference to the kind of paper used for its checks, or in failing to have them stamped with the safety device prior to their being signed or indorsed, or in leaving spaces in the four-hundred-dollar check when indorsed, nor any facts showing the relation of Bliss with respondent, his handling of the checks and his dealings as agent of the respondent with the appellant, that these facts may not be considered on this appeal under the claim of the appellant that thereby respondent is estopped from claiming that appellant should sustain the loss resulting from the payment of the forged checks.

When this case was in Department Two, in the decision thereof, it was said in the opinion when considering this point: "As the answer contains no allegation that the Otis Elevator Company, by its negligence or because it is bound by the acts of its agents, is estopped from denying the genuineness of these two checks, respondent urges that such estoppel is not a proper subject for our consideration on this

appeal. It must be remembered, however, that the purpose of the action was to determine whether or not plaintiff had a certain balance in defendant's bank. The payment of the two checks being pleaded by way of defense issue was completely joined. The forgery of the checks and plaintiff's conduct with reference to their preparation and custody were matters arising in connection with the offered proof of the principal allegation in the answer and plaintiff's attempted refutation of it. It was not necessary that any issue upon the alteration of the checks should be made by the pleadings. This seems to have been the theory of both parties to the action at the trial for there it was conceded that if plaintiff were responsible for the alteration of the checks the small balance in favor of the Otis Elevator Company which defendant admitted to exist would be the proper credit. The case was tried apparently upon the theory that the sole question before the court was whether or not plaintiff was estopped to deny its responsibility for the checks in the form in which they were presented for payment.'' We are satisfied of the correctness of this view.

Considering now the appeal on its merits and addressing our attention to the first check for five thousand five hundred dollars. There, of course, is no question but that this check was forged in the manner as heretofore set forth, and in that condition paid by the appellant to Bliss. In determining by whom the loss through this forgery should be borne, whether by appellant or respondent, we deem it of no importance to discuss the claim asserted by appellant of negligence on the part of respondent arising from the conceded failure of Burger to have the amount of this check punched upon it with the safety device before it was signed by him. Nor is the matter of asserted negligence in using ledger paper in drawing its checks instead of safety paper necessary for consideration. It appears in the evidence that respondent procured its own check-books to be made out of what is called "ledger" paper; that this character of paper was used in the manufacture of bookkeeping sets, one of its qualities as represented by the manufacturers thereof respecting it being, that in making entries in the books any error committed might be easily corrected and without apparent disclosure of the change by the use of a simple chemical preparation, thus permitting

the bookkeeper to keep a neat set of books. The matter of the use of ledger paper we deem only important as bearing on the condition of the check in question when it was presented by Bliss to the paying teller of the respondent for payment.

The claim made by the respondent and the view adopted by the trial court was that, as to this raised check for five thousand five hundred dollars, the evidence presented the simple case of a forgery perpetrated by Bliss to which is to be applied the well settled rule that as between a bank and its customers the payment of forged or altered checks by the bank is made at its peril and cannot be charged against the depositor's account. This, of course, is the general rule and it is applied stringently in cases of simple forgery which involve no other elements than that the purported check of the depositor which was paid was a forged one. But this rule is not applied unqualifiedly. It has its limitations and exceptions, as general rules usually have, and is modified to the extent that when some negligent act on the part of the customer has contributed to the payment by the bank or the facts in a particular case surrounding the forgery of a check and its presentation and payment are of such character as call for the application thereto of some general principle of law or equity, they may be relied on by the bank as an estoppel against the customer precluding him from denying the correctness of the payment.

While negligence of the respondent with reference to this check now under consideration is asserted here by the appellant bank as one of the grounds estopping respondent from questioning the correctness of its payment we do not find it necessary to discuss that matter because we are satisfied that under the facts in the case to which special reference will be made, the appellant is entitled to invoke a general principle of law with respect to agency which, in our opinion, fully sustains its defense that respondent is estopped from claiming that appellant was not justified in the payment of the check.

Our attention has not been directed by counsel on either side to any case presenting a similarity of facts to those presented here. But there are principles of law which in their scope have been made applicable in cases which, while not

identical as to facts, yet are sufficiently analogous to make the doctrine therein laid down applicable here.

It is the general doctrine of the law, as it is our statutory rule, that a principal is liable to third parties not only for the negligence of its agent in the transaction of the business of the agency, but likewise for the frauds, torts or other wrongful acts committed by such agent in and as part of the transaction of such business. (Story on Agency, sec. 452; Shearman & Redfield on Negligence, sec. 65; Civ. Code, sec. 2338.) After declaring this to be the rule Story says: "In all such cases the rule applies *respondeat superior;* and it is founded upon public policy and convenience for in no other way could there be any safety to third parties in dealings either directly with the principal or indirectly through the instrumentality of agents. In every such case the principal holds out the agent as competent and fitted to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency."

Within the rule thus laid down, we think this case, under the facts proven, is brought.

In discussing the application of this rule, under the facts here, it is conceded, of course, that the check in favor of "A Merle Co." when it was signed by Burger as filled out by Bliss was a completed check and that the only duty then with respect to it devolving upon Bliss was to send it to the payee. It may be further conceded that if the only relation which existed between respondent and Bliss was for the latter to write out checks and transmit them to the payees and simply by reason of an opportunity to do so he "raised" one of them and made it payable to bearer and presented it to appellant who paid it, that such a payment would be at the loss of the bank. But this was not the only relation of Bliss to the respondent. He was its agent, intrusted not only with the duty of filling out checks in his handwriting and presenting them to Burger for signature and transmitting them to the payees thereof, but was, in addition thereto, intrusted by the respondent with the duty of filling out and presenting and having cashed at the appellant bank checks signed by the respondent and payable to "cash" or "bearer," or payable to the order of Dickinson. This duty had been performed by Bliss for years and the cashing of such checks by Hooper,

the paying teller of the appellant, when presented by Bliss had been a frequent and usual thing. Of course the preparation and presentation to appellant for payment by Bliss of checks which were valid and unaltered checks of respondent payable to "cash" or "bearer" or indorsed to Dickinson, were acts within the scope of and in the direct course of his employment. And while it is true that as to the presenting of forged or altered checks Bliss was acting without the scope of his authority which authorized him to present only valid checks, still as far as the appellant bank is concerned, Bliss, in the preparation and presentation of this altered check, was acting within the direct scope and course of his employment which consisted in preparing and presenting checks of respondent payable to "cash" or "bearer," or to the order of Dickinson for payment by it.

There was nothing about the check in question to awake any suspicion in the mind of the paying teller of the bank; there was no alteration apparent on the face of the check; there was nothing whereby any negligence on his part can be attributed to the bank. The signature of Burger to the check was genuine; the body of the check was in the familiar handwriting of Bliss who was accustomed to fill out the checks of respondent; he had been for years intrusted by the respondent with the duty of presenting just such checks for payment as was here innocently paid by the bank; and it was presented in the direct course of his employment under the implied guaranty of respondent that as their agent for the purpose of presenting such checks and obtaining payment, Bliss was faithful and honest.

In the application of the rule we have been considering, it is of no consequence that the check here in question presented by Bliss was in fact a forgery on his part. The rule is based on the fact that as to the particular transaction the agent had exceeded his authority, actual or apparent. Whether in doing so the agent has been guilty of a breach of faith with his principal, or has committed a crime, is of no controlling moment as affecting the responsibility of the principal to third persons injured thereby. It is enough to fix the responsibility of the principal in behalf of an innocent third party if the agent, though acting criminally, was nev-

ertheless in perpetrating a fraud thereby on said third party, acting within the course of his employment.

So in the present case, while Bliss committed forgery in altering the check and made this forgery the means of perpetrating a fraud upon the bank, still as there was nothing on the face, or in the appearance, of the check to raise suspicion as to its validity, and it was the duty of Bliss, as the accredited agent of the respondent, to prepare and present for payment by the appellant bank checks filled out in his own handwriting signed by Burger and payable to "bearer," and the one in question was in all apparent respects such a check as in the direct course of his employment Bliss was authorized to present for payment, the loss for his fraud should fall upon the respondent and not upon the bank.

While, as we have said, there are no cases which have involved the precise facts presented here, there are cases quite analogous to it, and between which and this there can be no distinction in the application of the principle discussed.

In *London Life Insurance Co.* v. *Molsons Bank,* 5 Ontario L. R., 407, plaintiff sued to recover from the defendant bank moneys which the latter had paid out and charged to the account of plaintiff, it being alleged that the indorsements thereon by the persons in whose favor plaintiff had drawn checks in favor of defendant were forged. It appears that one Niblock had been for several years agent of plaintiff in Ottawa and had sent on to the home office of plaintiff in London a number of applications for life insurance, some genuine and some forged, and policies thereon were issued by the plaintiff. Niblock subsequently notified the plaintiff of the death of several beneficiaries named and forwarded to it proofs of loss, the signatures thereto being forged by him. Plaintiff sent checks to Niblock drawn on the defendant bank and payable to the claimants or supposed claimants or their order. With respect to the checks sent for such purpose it was the duty of Niblock to deliver them to the persons in whose favor they were drawn and obtain a discharge of the claims under the policies. When the checks, payment of which was involved in this suit, were received by Niblock he forged the indorsements of the payees' names, adding to these indorsements in some instances his own signature following the word "Witness." presented them to the defend-

ant bank for payment and they were paid. Numbers of checks for valid claims had been theretofore sent to Niblock, and he was in the habit of certifying to the bank the genuineness of the payees in payment of their claims of which, respecting a number of such checks, plaintiff had notice.

In the cited case, after a discussion in which it was pointed out that no distinction could be drawn between the checks involved in the suit upon which the name of Niblock was indorsed and those upon which it was not—all the indorsements of the payees being forged by him—it was said: "Assuming this view to be correct, are the plaintiffs affected by what was done by Niblock, so as to preclude them from disputing the right of the defendants to pay the cheques and charge the amounts paid to the plaintiff's account? In my opinion they are. . . . It was not shown that the practice of Niblock so certifying was exceptional in these particular cases; and the fair inference is, I think, that he did this throughout the period of his agency. . . . It would, as it seems to me, be a startling thing, at all events to business men, if it were to be held that a banker paying the cheques of his customer under circumstances such as existed in this case should be bound to suffer the loss occasioned by the fraud committed by the person whom the customer had intrusted with the powers and duties which were intrusted to Niblock. I am not, I think, required to so decide, but am warranted in holding that the loss must fall, where, in my opinion in justice it ought to fall—upon the plaintiffs."

In *Dougherty* v. *Wells Fargo & Co.* 7 Nev. 368, the plaintiff delivered to the agent of the defendant an old certificate of deposit issued by the defendant for the purpose of having it sent to San Francisco for renewal. The agent instead of getting it renewed fraudulently procured it to be cashed and appropriated the proceeds. The defendant was held liable for the fraudulent act of its agent as it was done in the course of his employment. The court said: "The liability, however, in such case arises not upon the rule that the agent acted for the principal in that particular transaction, but because he is employed by the principal in that character of business and is so held out as the person authorized and fully to be trusted therein. When the agent in such case does an act which is apparently within the general scope

of his authority, although not so in fact, if the principal were not held liable for the act, a third person, who had reason to believe that the agent was reliable and possessed authority in the particular matter from the general character of his employment might suffer loss; hence the law holds the principal liable upon the ground that he, rather than a third person equally innocent, should suffer.''

*Champion Ice Mfg. Co. etc.* v. *American Bonding & Trust Co.*, 115 Ky. 863, [103 Am. St. Rep. 356, 75 S. W. 197], discloses that defendant had executed an indemnity bond to plaintiff against loss from dishonesty or fraud on the part of its bookkeeper—Weitkamp by name—and plaintiff sued to recover for loss sustained on certain of its checks fraudulently raised by the bookkeeper and paid by its bank. Weitkamp's duties with respect to the plaintiff in that case corresponded to those of Bliss and his scheme of dishonesty was similar. The weekly payroll of the company was furnished to Weitkamp and his duty was to make out the checks payable therefor to himself, have them signed by the proper officer of the company and take them to the bank—the First National Bank of Covington—to be cashed. During the course of this employment, after the checks had been so drawn, signed, and returned to him, Weitkamp raised a number of them, cashed them at the bank and left for parts unknown. One of the defenses of the defendant Bonding Company was that the Covington bank was liable to the plaintiff for the sums obtained by Weitkamp on the altered checks and hence, the plaintiff had no cause of action against it, the defendant Bonding Company. In disposing of this claim the court said: "We do not so understand the law. . . . We may, for the purposes of this case, even admit the rule to be that a bank, in paying a fraudulent or altered check, does so at its peril, and at its own loss, but we think the facts of this case present an exception to this rule. It was known to the bank's officers that Weitkamp was the bookkeeper and trusted agent of appellant, and that he was required to fill up and cash its checks, though without authority to sign them in his own name or that of his employer. In the course of their business relations with the appellant, its officers and agents, the bank officers must be presumed to have become acquainted with their handwriting and that of Weitkamp; and therefore any

change of the amount of a check from appellant, appearing in the handwriting of Weitkamp, would have excited neither alarm nor suspicion in their mind as such alteration or change would have been within the apparent scope of Weitkamp's authority; and the payment by the bank of any check altered by him, under such circumstances, would not impose any liability on the bank to reimburse appellant for the amount thereof. It is unnecessary, therefore, to determine what the liability of the bank to appellant would have been under other circumstances."

It is claimed by respondent that this language of the Kentucky court is *dictum*. We are not prepared to agree with this claim. It was made a point in the case by the Bonding Company and the court held squarely that under the facts no liability on the part of the bank attached as the preparation and presentation of such checks to it was within the apparent scope of Weitkamp's authority. The court, it is true, further holds that, even if the bank were liable for the reimbursement to the plaintiff on these checks, this would not affect its right of action against it on the bond. We think, however, that this is but an additional reason for holding it liable upon its bond. But if it be conceded to be *dictum* we are satisfied that a correct principle of law was declared.

There is a class of cases where telegraph operators have used the wires intrusted to their care in sending fraudulent messages to third parties for the payment of money under which the operators or some one in league with them have obtained its payment. In such cases the companies have been held liable for the fraudulent acts of their agents. We see no reason why the principle of these decisions is not applicable here. Among the cases are the *Bank of California* v. *Western Union Tel. Co.*, 52 Cal. 282; *Pacific Postal Tel. Cable Co.* v. *Bank of Palo Alto*, 109 Fed. 369, [54 L. R. A. 711, 48 C. C. A. 413]; *McCord* v. *Western Union Tel. Co.*, 39 Minn. 181, [12 Am. St. Rep. 636, 1 L. R. A. 143, 39 N. W. 315]. In all these cases the messages were forged by the agents and their acts constituted a crime. In the case cited from the Federal Reporter, Minkler, the operator of the telegraph company conspired with one Barclay to cheat the defendant bank and to that end Minkler sent a forged telegraphic order purporting

to come from a bank in San Francisco to the defendant bank to pay one H. L. Cator $840. Barclay presented himself at the defendant bank, represented that he was Cator, and was paid the money. The court held the telegraph company liable, and after citing several telegraph cases in which a like conclusion was reached, said: "If either the agent or the operator should manufacture telegrams and send them over the company's lines, of the character of the telegram sent in the present case, they would be acting outside of the scope of their authority. But both would be acting in direct course of their employment, viz., transmitting messages over the company's lines. The company is held liable because it has placed its agent and operator in charge of its appliances and instruments for the transmission of dispatches over its lines, and authorized them to use the same. . . . In holding the telegraph company for the wrongful, tortious, and criminal acts of Minkler, we are not called upon to make any departure from the established principles of law. No additional or independent reasoning is required to show that the rule as announced in the telegraph cases is sound and just. Its foundation is based on the principle, often applied by the courts in a great variety of cases, that, if one of two innocent persons must suffer loss by the act of a third, he who put it in the power of the third person to do such act should be compelled to sustain the loss occasioned by its commission."

While in these telegraph cases the courts have sustained the liability of the companies under the broad equitable principle that where one of two innocent parties must suffer from the tortious conduct of a third party he who put it in the power of the third party to do the wrong must bear the consequence of the act, the specific principle extracted, and upon which liability of the company is based, is that though the act of the agent was criminal and necessarily outside the scope of his authority, still the sending of dispatches of a character similar to those forged was in the direct course of the employment of the agent; that intrusting him with the duty of sending messages was a guaranty to the receiver thereof that the agent was faithful and honest; that whether an agent was unfaithful in the discharge of his duties, or that there were circumstances making his action in sending a particular message unauthorized or criminal, the receiver

of the message could not know and it would be an impracticable and unreasonable rule to require him to investigate the honesty or integrity of the agent or his fidelity in performing his duty before acting upon the message.

We perceive no reason why the principle applied in the telegraph cases is not equally applicable here. Repeating in connection with these cases what we have said elsewhere, Bliss had been intrusted by respondent with the duty of filling out its checks in his own handwriting and payable to bearer, and after signature by Burger, presenting them to the paying teller of the appellant bank for payment. This was a usual thing for Bliss to do, and by permitting it the plaintiff guaranteed the integrity and honesty of Bliss; and that he would not present for payment to the appellant bank other than valid checks of the respondent. Plaintiff intrusted him with the particular check now under consideration for a special purpose and while in his possession he altered it. But when presented for payment by him to the bank it was still in his handwriting, payable to bearer, as was frequently the case when checks were presented by him, and bore the genuine signature of Burger. There was nothing about the check to awake any suspicion on the part of the bank as to its genuineness. The alteration of it by Bliss while it was in his possession for the particular purpose for which it was intrusted to him was a crime and its presentation and payment as altered a fraud upon defendant bank, still, as the preparation and presentation of checks such as this one purported to be was in the direct course of the employment of Bliss, under the principle of the telegraph cases we have discussed as well as the others cited, the respondent, whose agent Bliss was, should bear the loss from his fraudulent conduct and not the appellant bank.

There is no such particular relation existing between a bank and its customers that denies the application of the general rules of agency which apply in other relations. The commercial business of to-day is largely done through the medium of banks and the free use of checks and other commercial paper. It is equally the fact that business in its wider sense is conducted principally by corporations necessarily acting through agents in relation to their depositary banks, as well as the rest of the business world, and we are

unable to perceive why when an agent of a customer of a bank while acting in the course of the employment with which the customer has intrusted him commits a fraud upon the bank, the same rule of responsibility for the fraudulent conduct of the agent under such circumstances should not apply, as it applies to other relations between parties where the acts of the agent in the course of his employment are involved.

In support of their claim that under the facts here the loss for the fraud of Bliss respecting this check must be borne by the appellant bank, counsel for respondent rely on *Hall* v. *Fuller*, 5 Barn. & C., 750; *Belknap et al.* v. *National Bank of North America*, 100 Mass. 376, [97 Am. Dec. 105] ; *Crawford* v. *West Side Bank*, 100 N. Y. 50, [53 Am. Rep. 152, 2. N. E. 881] ; *Chicago Savings Bank* v. *Block*, 126 Ill. App. 128, and *Walsh* v. *Hunt*, 120 Cal. 46, [39 L. R. A. 697, 52 Pac. 115].

But these cases have no application to the point now under consideration. The point decided in them had relation to the asserted negligence of the principal based on special facts surrounding the relation of principal and agent in the matter of the preparation or handling of checks and the duties of the agent respecting them. They presented no facts under which the rule of liability of the principal for the acts of the agent done in the direct course of his employment could arise and no such rule was considered. As an illustration, taking the case of *Belknap et al.* v. *National Bank of North America*, 100 Mass. 376, [97 Am. Dec. 105], as approaching in its facts nearer the case at bar than any other. The plaintiffs, who were commission merchants, signed a number of blank checks on the defendant, their bank, and left them with their bookkeeper to be filled out and sent by mail to customers at a distance. The bookkeeper committed this task to a clerk in the office, who, having performed it, returned the checks to the bookkeeper. When returned, the checks were drawn as directed, payable to each customer by name "or order." The bookkeeper examined the checks and placed them in envelopes addressed to the various payees and delivered the letters to the same clerk who had filled in the checks. Subsequently, the clerk abstracted some of the checks from the envelopes, drew a line through the words "or order"

and wrote in the words "or bearer." These checks were presented to the bank and paid, but who presented them does not appear. The trial court left it to the jury to determine whether under the evidence it was negligence on the part of the plaintiff to issue the particular checks there in question with a blank space after the name of the payee and before "or order" which permitted the insertion of the words "or bearer" by the clerk, or whether it was negligence on the part of plaintiff to intrust the mailing of the letters to the clerk who had drawn the checks inclosed therein. It was held by the appellate court that there was nothing in the evidence warranting the instructions. No question was involved in that case of the responsibility of the principal for the fraudulent act of the clerk because committed in the course of his employment. On the contrary it was stated in the opinion that "plaintiff frequently drew checks payable to 'notes payable or order,' and in all such cases some one of the plaintiffs personally or their bookkeeper received the money from the bank," which of course precluded the bank from asserting that the checks were paid by it in the course of the employment of the clerk in drawing and presenting for payment checks in all respects similarly drawn.

Nor is our own case of *Walsh* v. *Hunt*, 120 Cal. 46, [39 L. R. A. 697, 52 Pac. 115], at all in point on this matter. The facts in that case did not call for the application of the doctrine of agency we have been discussing. As an authority it may have some bearing on the question of asserted negligence of respondent in signing the other check in question for four hundred dollars with blank spaces left therein and subsequently filled in by Bliss. Aside from this it could have no application.

Now, as to this second check. The principle which we determine is applicable as to the larger check is equally applicable to this second check. While it is further claimed by appellant that the plaintiff was negligent in drawing it with spaces unfilled and thus making the matter of its alteration simple, and for that reason should sustain the loss of its payment, there is no occasion to consider that point. As with the larger check, this smaller one was filled out in the handwriting of Bliss and bore the genuine signature of Burger and was payable to bearer. There was nothing on its face

to indicate that it was in any respect different from checks which as similarly drawn Bliss was authorized by respondent to fill out, and, when signed by respondent, present for payment and have cashed at the bank. The drawing of this check and its presentation for payment were acts done by Bliss in the direct course of his employment as agent of respondent, and under such circumstances respondent is estopped from asserting that the loss thereof should be cast upon the bank. Such loss as to these two altered checks, on both principle and authority, must rest, where in fairness it should rest, upon the respondent.

The order appealed from is reversed.

Shaw, J., Henshaw, J., Sloss, J., and Melvin, J., concurred.

Rehearing denied.