[Sac. No. 4773. In Bank.—March 1, 1934.]

LISTON CLARK, Respondent, v. J. G. TAVARES, Defendant, and YOSEMITE PORTLAND CEMENT CORPORATION (a Corporation), Appellant.

F. H. Pearson and Earl & Hall for Appellant.

J. Oscar Goldstein for Respondent.

PRESTON, J.—Respondent, plaintiff below, to secure the fruits of a rescission *in pais* on a contract to purchase shares of stock of the appellant corporation, sued the said corporation and its stock sales manager, J. G. Tavares, for the sum of $6,000, representing the value of securities exchanged by respondent for said stock, which transaction was alleged to have been induced by fraudulent representations.

The complaint is in three counts and declares upon three separate transactions: First, it alleges that on September 24, 1928, for 113 shares of class A stock of said corporation, respondent gave in exchange 22 shares of the common capital stock of the Pacific Gas and Electric Company. Second, it alleges that on September 27, 1928, for 152 shares of class A stock of said corporation, respondent gave in exchange 10 shares of the common capital stock of the Pacific Telephone and Telegraph Company. Third, it alleges that on October 26, 1928, in part payment for 335 shares of class A stock of said corporation, respondent gave

15 shares of the stock of the Bank of Italy and supplied the balance of the purchase price by giving a check for $293.75.

The purchase price was $10 per share although the evidence shows that the stock was offered as low as $6 per share at the office of defendant stock sales manager. The parties who directly perpetrated the fraud in the first two instances above named were George F. Kenney and D. A. Schlemmer, working together, and in the third instance, A. Shapiro and B. L. Goldberg, working together. Schlemmer was the leading conversationalist in inducing the first two purchases. He had been a sales manager of appellant, selling its cement products. The four men were working under the immediate supervision and direction of defendant Tavares, who made no defense to this action but defaulted therein.

The cause was put at issue and the court made findings of fact and gave judgment in favor of respondent, giving him the full relief prayed for and decreeing that the stock of appellant corporation, having been deposited in court, be held subject to the order of defendants.

The only contention worthy of full discussion is that the four representatives above named, who perpetrated the initial fraud, were agents of the defaulting defendant, Tavares, only, and were in no sense the agents of appellant. Appellant bases its chief reliance upon the fact that in the letter of authority to Tavares, it specified: ''All salesmen are to be and to remain your employees without any liability upon the part of this corporation or otherwise,'' and upon the further fact that the letter stated that commissions on all sales were to be paid only upon receipt of the cash from the selling price of the stock. To this should be added the further contention that appellant did not receive any of the proceeds of the securities converted nor did it part with any of its treasury stock, but that orders of respondent were filled from privately owned stock of others.

At the outset it should also be noted that in said letter of authority above referred to, appellant reserved the right to employ other salesmen and the court specifically found that the persons making the fraudulent representations were agents, servants and representatives of both appellant and its co-defendant. Enough of the evidence will now be recited to show that this finding is properly supported.

Appellant, in pushing its campaign to sell its treasury stock, after securing the services of Tavares as stock sales manager, printed and circulated extensive literature in which it vouched for Tavares as its stock sales manager. A copy of this literature was specially mailed to respondent, among others in the community in which he resided, of which fact he had knowledge. In this literature appellant specifically named the above agent, Schlemmer, as its sales manager, using the following language: "D. A. Schlemmer, Sales Manager. One of the most successful sales executives in the industry; for 10 years with the Nicolson Syndicate Mills of Kansas; subsequently sales and traffic manager of the California Portland Cement Company of Los Angeles." As already noted, respondent states that this man made the first misrepresentations to him. Also, prior to call upon respondent of any of the agents, he received direct from appellant a communication over the signature of appellant's president, "An invitation to become associated with them in the ownership and earnings of the corporation". This invitation bore a serial number and, among other names appended to it, was that of "D. A. Schlemmer, Director of Sales".

The nature of the fraud practiced upon respondent need not be dwelt upon as it is conceded that the evidence supports the conclusion of the court below that material misrepresentations of fact were made to respondent, which induced the purchase in each instance. When these agents called upon respondent, they had order blanks of appellant numbered serially. Respondent, in making each purchase, signed one of these applications. They were addressed to the company itself and also bore the following: "Yosemite Portland Cement Corp., J. C. Tavares, Securities Dept. (Signed) George F. Kenney, Agent" and "Make all checks payable to Yosemite Portland Cement Corporation." The serial number of the first one executed by respondent to appellant was No. 7998. On the very day it was signed, order No. 7997 was signed by one Crippen, and the records of appellant show that the salesmen who conducted the latter sale were Geo. F. Kenney and D. A. Schlemmer. The records of appellant also show that correspondence occurred between said Crippen and the corporation respecting this subscription. Likewise, in the stock sales record of appellant, the names of George F. Kenney, D. A. Schlemmer,

A. Shapiro and Goldberg & Shapiro, appear in a number of instances, showing that appellant knew of their activities and in many instances ratified their acts. Said records also show that numerous sums as commissions were paid to Tavares on subscriptions taken by these men. It is also significant that in procuring the shares of stock to deliver to respondent, use was made of shares standing in the name of the secretary of Tavares, one B. Sperry, and also standing in the name of H. J. Redgrave and C. R. Cobb. None of these parties appeared as witnesses. The name of Sperry was known to the corporation as the secretary of Tavares. The names of the other parties were unknown to it and it had no addresses by which to locate them. Not only this, but none of the four agents who perpetrated the fraud was produced by appellant, nor was Tavares. The correspondence between Tavares and respondent, introduced in evidence, shows clearly that treasury stock was purported to be delivered to respondent in each instance. In other words, Tavares confirmed, and aided by concealment, the fraud practiced upon respondent by the other agents.

The company knew or should have known that neither Tavares nor his secretary owned any stock of the corporation and should also have taken heed as to whether the addresses of the above-mentioned parties were noted on its books. The court was warranted in believing that the whole transaction was one to circumvent the provisions of the permit which required sales to be for cash and did not contemplate an exchange of stock for the valuable securities of respondent. Why should numerous cash sales by these agents have been properly noted on the books of appellant while the transactions with respondent were not so noted?

The facts fully justified the court below in holding that said four named persons were agents of both appellant and defendant Tavares. It is also clear that the fraud practiced by them was committed in and as part of the transaction of the business of appellant (sec. 2338, Civ. Code; *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 39 [124 Pac. 704, 41 L. R. A. (N. S.) 529]; *Johnson* v. *Monson,* 183 Cal. 149, 151 [190 Pac. 635]; *Ruppe* v. *City of Los Angeles,* 186 Cal. 400, 402 [199 Pac. 496]).

It is not necessary to determine whether this cause is one on the law or the equity side of the court; if the former, it was properly appealable to the district court of appeal.

In order to avoid any possible question in this connection the cause has been regularly transferred to this court for decision.

A consideration of the merits renders the motion to affirm a moot question and, accordingly, it is denied. The judgment is affirmed.

Langdon, J., Shenk, J., Thompson, J., Waste, C. J., and Curtis, J., concurred.

Rehearing denied.