[S. F. No. 15124. In Bank.—September 27, 1935.]

NADINE M. TWOHEY, Appellant, v. THE REALTY SYNDICATE COMPANY (a Corporation) et al., Respondents.

Thomas D. Aitken for Appellant.

McKee, Tasheira & Wahrhaftig, Theodore Tamba and Horace W. B. Smith for Respondents.

PRESTON, J.—This is a judgment roll appeal by plaintiff from a judgment for defendants. The appeal affects only defendant The Realty Syndicate Company, defendant surety companies having secured a dismissal of the action as to them.

Respondent and appellant occupy respectively the position of seller and purchaser of real property. Appellant, either by direct negotiations or by assignment, became the purchaser under four instalment contracts of sale executed by respondent and for convenience here designated contracts 1, 2, 3 and 4. On May 28, 1930, by mutual consent, payments made on contracts 1, 3 and 4 were transferred and credited upon contract

No. 2, so there was subsisting at the time of trial of this action only contract No. 2. This contract was for an instalment purchase of a series of lots for the contract price of $8,250. After the adjustment above referred to and payment of $600 additional by appellant, there still remained unpaid on said contract the sum of $4,247.52, if the books of respondent are to be considered as final in the matter. But appellant denies that said book accounts are correct and by this action she seeks to compel credit on said contract No. 2 of a sum in excess of said balance claimed by respondent to be due thereon and judgment for such excess. Her contention grows out of the following undisputed facts:

In the negotiations which resulted in these contracts appellant dealt exclusively with the agent of respondent, one James R. Farrell, and with the exception of a single $10 item each payment made by her on each of the contracts was made exclusively to and through said agent. Respondent ratified all acts of its agent in negotiating the contracts and all sums reported by him to it were accepted as payments and noted upon its books. It further appears that to meet her obligations under said contracts appellant endorsed in blank and handed to said agent for delivery to respondent on account thereof, certificates and shares of listed stock as follows: October 21, 1929, 7 shares; October 30, 1929, 18 shares; December 26, 1929, 1 share; January 15, 1930, 2 shares; December 28, 1929, 2 shares. The market value of said certificates, calculated as of the respective dates of delivery to said agent aggregated the sum of $7,223.50. Had said sum been applied to said contracts appellant would not have been in arrears on any of her purchases. The truth of the matter seems to be that the agent Farrell converted these stocks into cash and reported only the sum of $2,504.83 thereof to respondent, appropriating unto himself the remainder. Appellant seeks to hold respondent liable for the full amount of the proceeds of sale of said stock. Respondent counters with the contention that Farrell was not authorized to collect the instalments due in any form except money and by delivering the stock to Farrell she thereby constituted him her agent for disposition thereof, thus deducing the conclusion that respondent is not liable to appellant therefor.

The court, however, found as follows: "That plaintiff delivered to said Farrell certificates for thirty shares of . . .

stock . . . issued in her name . . . endorsed by her in blank" on the dates above set forth; "that said certificates were delivered for the purpose of having the shares of stock represented thereby sold by defendant . . . at the highest market price obtainable at the respective times said certificates were delivered and having the proceeds thereof applied as payments on said contracts and were so delivered on an agreement made by plaintiff with said Farrell that said shares would be sold and the proceeds so applied . . . "

Under this finding respondent became responsible to appellant for the proceeds of said stock upon any one of three or four separate and well-understood principles. We need mention but two. The transaction falls clearly within the principle embodied in section 2338 of the Civil Code, which reads: "Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal." (*Otis Elevator Co.* v. *First Nat. Bank*, 163 Cal. 31 [124 Pac. 704, 41 L. R. A. (N. S.) 529]; *Clark* v. *Tavares*, 220 Cal. 267 [29 Pac. (2d) 859]; *Johnson* v. *Monson*, 183 Cal. 149, 151 [190 Pac. 635].)

Again, we do not hesitate to declare as a matter of law that a principal who confers upon his agent the power to negotiate a sale of his property in his name and to collect the purchase price therefor in instalments, is thereby estopped to deny authority in such agent to receive from the purchaser for his account listed securities which are the equivalent of cash to be applied upon such purchase price. This is a clear case of ostensible authority. (Civ. Code, sec. 2317.)

As a further defense to the action respondent pleaded that by virtue of the release of the three other contracts above mentioned and application of the sums paid thereon as credits on contract No. 2, and by reason of the payment of the additional sum of $600 upon contract No. 2, there arose between the parties an account stated which effectively excluded the consideration of the proceeds of sale of said certificates of stock. It is true that the answer properly pleads an account stated, but it is equally true that the court specifically and intentionally refused to make a finding covering the elements of

such a defense. On the contrary, finding No. 13, which covers this matter, is to the effect that the court only found that respondent rendered to appellant a full and complete accounting of its own book entries. From the findings as a whole it is clear that the court found that there was no other subject-matter under consideration than the entries that appeared on the books of respondent, which showed only credits or offsets as entered therein and not as they may have existed in fact.

The adjustment that took place on May 28, 1930, as chronicled in the findings, is wholly independent of and without reference to the claims of appellant here asserted. It is not shown that the transaction was anything more than a voluntary waiver and adjustment of the several contracts existing and a condensation of them into one purchase. Appellant is obligated by her written contract. No other special written contract is shown to have supplanted it. Whatever may be the proper characterization of these adjustment negotiations, it is clear that the contract of purchase was in writing; that the negotiations left this contract still subsisting and therefore executory, and because of such fact, to alter it a promise in writing would have been required to satisfy the statute. (See. 1698, Civ. Code.) A quotation from *Bennett* v. *Potter,* 180 Cal. 736, 744 [183 Pac. 156], seems directly applicable.

█ ''An account stated is a mere unperformed promise by one party to pay a stated sum to another, and it is therefore an executory contract. (Civ. Code, sec. 1661; *Pearsall* v. *Henry,* 153 Cal. 314, 325 [95 Pac. 154].) To allow a written contract to be thus altered by an oral statement of account, or by any statement not agreed to in writing by the debtor, would violate the rule of the code that 'a contract in writing may be altered by a contract in writing, or by an executed oral agreement, and not otherwise'. (Civ. Code, sec. 1698.)''

It appearing from the foregoing that respondent was fully liable to appellant for the unaccounted for proceeds of said stock, it is ordered that this judgment be and same is hereby reversed with directions to the court below to take such further steps in the cause as may be found meet and proper and not inconsistent with this holding.

Langdon, J., Seawell, J., Shenk, J., and Waste, C. J., concurred.

Rehearing denied. Thompson, J., and Conrey, J., voted for a rehearing.