JAMES BAKER, RESPONDENT, *v.* A. G. KINSEY, APPELLANT.

MASTER AND SERVANT.—The master is not chargeable with the acts of the servant, unless he acts in the execution of the authority given by the master, and then the act of the servant is the act of the master.

IDEM.—An action to recover damages for the bite of a vicious dog belonging to the toll-keeper, cannot be maintained against the owner of a bridge, if it appears that the defendant did not keep or harbor the dog in person, and did not authorize or require him to be kept, and did not need that the dog should be kept, for the conduct or protection of the business in which the owner of the dog was employed, or as his assistant as toll-keeper.

APPEAL from the District Court of the Sixth District, Sacramento County.

The case is stated in the opinion.

*Bowie & Catlen,* for Appellant:

The judgment is not supported by any evidence whatever.

To make the matter liable for the negligence of the servant, the act of the servant causing the injury must be under the authority given him. (*Middleton* v. *Fowler,* 1 Salk. 282.)

When a servant does a thing outside of the business which he is employed to do, he no longer acts under his master's authority, and the master is not liable. (*McManus* v. *Crickett,* 1 East. 108 ; *Mitchell* v. *Cressweller,* 13 Com. B. 237 ; *Coleman* v. *Riches,* 16 Com. B. 104 ; *Hay* v. *The Cohoes Co.* 3 Barb. 42 ; *Foster* v. *Essex Bank,* 17 Mass. 479 ; *Campbell* v. *Phelps,* 17 Mass. 244.)

The question seems to be, whether the act be such that he can justify himself to his master. If he may, it shall be deemed in the course of his business as a servant, and the master is liable. (*Harlow* v. *Hum'ston,* 6 Cow. 189.)

A master is liable for the acts of his servant, done in the course of his employment about his master's business, but not for the act of his *free servant* done outside of his employment. (Hilliard on Torts, Vol. II, 427–9.)

Beyond the scope of his employment, he is as much a stranger to his master as any third person. (Story on Agency, Section 452; Paley on Agency, 294–298 ; Smith's Master and Servant, 160, margin.)

*Alexander & Armstrong,* and *O. C. Lewis,* for Respondent:

*First*—When a person keeps or harbors a ferocious dog, knowing him to be so, *even* though he is not the owner of him, he is liable to any person injured by the animal while on his premises. These principles, and as to what is sufficient notice, are discussed in the following cases : (*Loomis* v. *Terry,* 17 Wend. R. 496–501 ; *Wilkinson* v. *Parrott,* 32 Cal. 103.)

*Second*—Did the appellant keep the dog within the meaning of the law? We think he did. The animal was kept at his toll-house, at the bridge, by his toll-keeper, Dyer, by the permission of his general agent, Eastman. (*Boswell* v. *Laird,* 8 Cal. 489 ; *Laugher* v. *Painter,* 5 Barb. & Cres. 576.)

*Third*—The principle is elementary that notice to an agent is constructive notice to the principal, and this doctrine has its foundation in the principle that a principal must, at his peril, employ careful, faithful, honest and prudent persons as agents, such as will deal fairly with himself and act prudently as to others, and if he fails to employ such agents, he must bear its consequences. Both Eastman and Dyer knew of the vicious character of the dog. (*Bierce* v. *Red Bluff Hotel Co.* 31 Cal. 165.)

*Fourth*—It was the duty of the owner to keep the bridge in good repair, and free from obstructions of every kind. (3 Black. Com. 219 ; *Norris* v. *Farmers' & Teamsters' Co.* 6 Cal. 595 ; *Wright* v. *Wilcox,* 19 Wend. 344.)

SANDERSON, J. delivered the opinion of the Court:

This is an action to recover damages for personal injuries sustained from a bite by a vicious dog. The plaintiff was nonsuited as to Eastman, one of the defendants, but recovered as against the others, Kinsey and Dyer. Kinsey moved for a new trial without success, and then brought the case here, and asks a reversal upon the grounds, First—That so far as he is concerned, the verdict is not sustained by the testimony ; and, Second—That in respect to him, the charge

of the Court was erroneous.  But a separate consideration of these grounds is not deemed necessary.

The testimony shows that the defendant, Dyer, was in the employment of the defendant, Kinsey, and one Whitely, as keeper and collector of tolls, at a bridge near Folsom, which bridge and toll franchise was the joint property of Kinsey and Whitely.  That both Kinsey and Whitely were non-residents of Folsom—the former being a resident of San Francisco, and the latter of the State of New Jersey.  That the defendant, Eastman, resided at Folsom, and acted as agent of Kinsey and Whitely in employing Dyer as keeper, and in receiving from Dyer the tolls, and transmitting them to Kinsey and Whitely; that Dyer procured the dog, while a pup, through Eastman, at his own suggestion, and kept him at the bridge as a companion, and because he had a fancy for dogs.  That the dog was vicious and accustomed to bite mankind, and that he was not securely kept by Dyer, but was suffered at times to go at large, without being guarded or muzzled.  That the vicious disposition of the dog was known to Dyer and Eastman.  But the testimony fails to show that either Kinsey or Whitely ever heard of the dog, or that they had directed Dyer or Eastman to keep a dog at the bridge, or that they had consented that one should be kept there, or that there was any reason or necessity for keeping a dog at the bridge, so far as any interest of Kinsey or Whitely was concerned.

It thus appearing that Kinsey did not, in fact, keep or harbor the dog in person, and did not, in fact, authorize or require him to be kept, and did not, in fact, need that the dog should be kept for the conduct or protection of the business in which Dyer was employed, or as an assistant to Dyer, it is obvious that there can be no ground or principle of law upon which the verdict can be sustained, unless it be the doctrine of *respondeat superior*.  In view of these facts, unless Dyer acted as the servant of Kinsey, *in the matter of keeping and harboring the dog*, Kinsey cannot be held responsible for the injuries which the plaintiff sustained; for that relation, in the particular act of which complaint is made, is

the test in every case, as to whether the principle of *respondeat superior* applies.

In order to hold the master responsible for the act or omission of the servant, it must appear that the act or omission was, in contemplation of law, the act or omission of the master. Said Holt, Chief Justice, in *Middleton* v. *Fowler* (1 Salk. 282): "No master is chargeable with the acts of his servant, but when he acts in execution of the authority given by his master, and then the act of the servant is the act of the master." So, if the servant can justify his act to his master as being within the line of his duty to him, the act is the act of the master, and not otherwise. (*Harlow* v. *Humiston*, 6 Cowen, 189.) So are all the cases. (*M'Manus* v. *Crickett*, 1 East. 108; *Mitchell* v. *Cressweller*, 13 Com. Bench. 108; *Coleman* v. *Riches*, 16 *Id.* 104; *Hay* v. *The Cohoes Co.* 3 Barb. 42; *Boswell* v. *Laird*, 8 Cal. 497; *Fanjoy* v. *Seales*, 29 *Id.* 249; *Kline* v. *The Central Pacific Railroad Co. of Cal.* 37 *Id;* *Du Pratt* v. *Lick*, present term.)

But, it is further argued on the part of the plaintiff: First—That Kinsey, being one of the proprietors of the bridge, had, therefore, control over the bridge, and could have forbidden and prevented the keeping of a vicious dog by his servant, in possession of the bridge, and ought to have done so if he knew the dog was vicious, which, as is further argued, he must be held to have known, because his agent knew it; and, Second—That, being one of the proprietors of the bridge, he was bound to see that it was kept in repair and clear of obstructions, and in all respects safe and fit for the use of the public; which duty, as is further argued, includes the further duty of seeing that no vicious dogs are allowed to be about the toll-house, rendering an approach to it, for the purpose of paying toll, dangerous to the persons of travellers.

The control which Kinsey had over the bridge and toll-house, was not such an immediate or actual control as would constitute him the keeper or harborer of such domestic animals as might at any time be found on the premises. In *Wilkinson* v. *Parrott* (32 Cal. 102), it was claimed that the dog, although kept and harbored upon the premises where

Parrott resided, and over which he, therefore, had complete dominion, was so kept by one of his servants ; yet, it appearing that Parrott knew that the dog was kept about his premises, and that he was vicious, the fact that the property in the dog may have been in the servant, was not considered as relieving Parrott from responsibility. The facts here, however, are widely different. Kinsey was not in the actual possession and control of the toll-house, nor did he know that the dog was being kept or harbored there by his servant, nor did he know the character of the dog. The facts, therefore, and all of the facts upon which Parrott was held to be a keeper of the dog, within the meaning of the law, are entirely wanting in this case.

Nor do we think that the dog can be considered as an obstruction to safe travelling across the bridge, within any rule of law, as to the obligation of Kinsey to keep the bridge in a safe condition. But, accepting the dog as an obstruction, the plaintiff must still fail of a case, for the obstruction is not shown to have been put there by Kinsey's direction, and the nature of Dyer's employment, for aught that appears, was not such as to authorize or require it. Suppose Dyer had wilfully taken up a plank in the bridge, without any occasion to do so, for the purpose of repairs, or otherwise, and without the knowledge or direction of Kinsey, and, by reason thereof, the plaintiff had sustained his injury, could there have been any pretense for holding Kinsey responsible? That there could not, is clear from the cases already cited, for the act would not have been within the general scope of Dyer's duty or employment, nor within any express authority given by Kinsey. If, then, the dog was an obstruction to safe travel, it was an obstruction put there by Dyer, not in the course of his employment, nor under any express direction from Kinsey, but wilfully, and without authority from his master ; and, by parity of reason, Kinsey can no more be held responsible than in the case supposed.

Judgment and order reversed as to Kinsey, and a new trial granted.