[L. A. No. 6110. In Bank.—June 29, 1921.]

DORIS RUPPE et al., Respondents, v. THE CITY OF LOS ANGELES (a Municipal Corporation), et al., Appellants.

[1] MUNICIPAL CORPORATIONS — ASSAULT COMMITTED BY EMPLOYEE — COURSE OF EMPLOYMENT—LIABILITY OF CITY.—A municipal corporation engaged in the business of supplying electric energy for light and power to its inhabitants is liable for an assault committed by one of its meter-setters in forcing his way into a building, which he had been directed by the city to wire and set meters in, regardless of whether the assault was authorized by the city or was committed in violation of instructions.

[2] MASTER AND SERVANT—TORTS OF SERVANT—LIABILITY OF MASTER. A master is responsible for the acts of his servant done in the course of his employment, even though those acts be unauthorized or contrary to the master's explicit instructions.

[3] ID.—WILLFUL OR MALICIOUS ACT—LIABILITY OF MASTER.—A master is not liable where his servant steps aside from his employment

---

1. Liability of master for assault committed on woman by servant, note, 6 **A. L. R.** 1007.

2. Liability to master for servant's acts within scope of employment, notwithstanding his disobedience of orders, notes, 40 **Am. Rep.** 226; 5 Ann. Cas. 123; 27 **L. R. A.** 167.

3. Liability of master for act of servant not in course of his employment, note, 29 **Am. Rep.** 640.

When liability of master reattaches after deviation by servant from course of employment, notes, 3 **Ann. Cas.** 607; 20 Ann. Cas. 1292.

to do a willful wrong, and frequently the willful or malicious character of his act is quite material in determining whether he did so step aside or was truly going on with his master's business, but even if the act be malicious or willful and yet be one done in furtherance of the purpose of the servant's employment, the master is liable.

APPEAL from a judgment of the Superior Court of Los Angeles County. John W. Shenk, Judge. Affirmed.

The facts are stated in the opinion of the court.

W. B. Mathews, Charles S. Burnell, City Attorney, Trent G. Anderson, Ray C. Eberhard and Lewis E. Whitehead for Appellants.

Hibbard & Kleindienst for Respondents.

OLNEY, J.—The defendants may be considered as one for the purposes of discussion, and that one the city of Los Angeles. From a judgment against it for five hundred dollars, had after a trial without a jury, the city appeals.

The complaint alleges and the court finds that the defendant was engaged in the business of supplying electric energy for light and power to its inhabitants, and had in its employ as a meter-setter one Nealon; that Nealon, with certain fellow-employees of the city, was sent by it to wire a certain building and set meters therein so that electric energy might be furnished by the city in the building; that the plaintiff was in charge of the building and attempted to prevent Nealon and his fellow-workmen from entering and doing the work they had been sent to do; and that Nealon, in order to force his way into a certain portion of the building for the purpose of there doing some work, assaulted the plaintiff, inflicting personal injuries upon her. For these injuries a recovery was sought by the complaint and allowed by the judgment appealed from.

[1] The evidence as to the commission of the assault was conflicting and the finding of the trial court upon that issue is conclusive and is not attacked. The chief contention of the city is that upon the facts alleged and upon the evidence it is not liable for the assault. Its point is that it is not alleged, and the evidence does not show, that the assault was authorized by the city; that, in fact, the evidence

shows without contradiction that it was contrary to Nealon's express instructions. It is, however, wholly immaterial whether or not the assault was authorized by the city, or was committed by Nealon in violation of his instructions. It is plain enough that it was committed by him in the course of doing that which he had been sent to the building by the city to do and in furtherance of its doing; that it was, in other words, an act done by him in the course of his employment. **[2]** The rule is elementary that a master is responsible for the acts of his servant done in the course of his employment, even though those acts be unauthorized or contrary to the master's explicit instructions. As between the master and third persons, the acts of the servant done as a part of the doing of that which he is employed to do are as if done by the master himself, and the question of authority as between the master and servant to do the particular acts is quite immaterial. (Cooley on Torts, 3d ed., pp. 1016–1030; Civ. Code, sec. 2338; *Rounds* v. *Delaware etc. Co.*, 64 N. Y. 129, [21 Am. Rep. 597]; *Otis Elevator Co.* v. *First Nat. Bank*, 163 Cal. 31, 39, [41 L. R. A. (N. S.) 529, 124 Pac. 704]; *Johnson* v. *Monson*, 183 Cal. 149, [190 Pac. 635].)

Reliance is placed by the defendant upon the authority of *Rahmel* v. *Lehndorff*, 142 Cal. 681, [100 Am. St. Rep. 154, 65 L. R. A. 88, 76 Pac. 659]. It is there said: "By the general law of master and servant, the master is not liable for the malicious torts of the servant committed outside the scope of his employment. The wrongful act must be one which the servant is empowered under some circumstances to do." But the court was there speaking of an act malicious on the part of the servant, an intentional doing by him of a wrongful act. **[3]** A master is, of course, not liable where his servant steps aside from his employment to do a willful wrong, and frequently the willful or malicious character of his act is quite material in determining whether he did so step aside or was truly going on with his master's business. But even if the act be malicious or willful and yet be one done in furtherance of the purpose of the servant's employment, the master is liable. This is plainly implied in the first sentence quoted from *Rahmel* v. *Lehndorff*, and is the thoroughly well-established rule. (See the preceding reference to Cooley on Torts.) In

the present case, in the first place, it is not found that the assault complained of was malicious, and, in the second place, it is found that it was committed in the course of Nealon's employment. This finding is justified by the evidence, which shows that the assault was committed by Nealon while endeavoring to open a door against the plaintiff's resistance for the purpose of going on with his work.

Something, perhaps, should also be said as to the statement in the second sentence quoted from *Rahmel* v. *Lehndorff*, that ''The wrongful act must be one which the servant is empowered under some circumstances to do.'' If this be taken to mean that the act must be one which the servant is authorized under some circumstances to do, the statement is undoubtedly too narrow. A very simple illustration will make this plain. A servant employed to drive an automobile exceeds the legal speed limit and as a result injures some third person. It will not be questioned that the master is liable. This would be true no matter how explicitly the master had instructed the servant never to exceed the speed limit, and although the exceeding of that limit is a crime and something which it cannot be presumed the servant was authorized to do under any circumstances. It would be true because the master has entrusted the servant with the driving of the automobile, and, having done so, is responsible for what the servant does in driving it. In other words, while the master has not empowered the servant to break the law in the sense that he has authorized him to do so, he has empowered him in the sense that he has entrusted him with the performance of a duty in whose performance it is possible for him to break the law. The word ''empowered,'' as used in the sentence quoted, must be taken to mean empowered in this sense and not in the sense of ''authorized.'' Within the rule of the sentence quoted as so interpreted, the assault by Nealon falls and his master, the city, is responsible for it.

The only other point made by the city is that the plaintiff had no authority whatever to stop the city's employees from wiring and metering the building, and was a gratuitous intruder upon them in their work. But, whether this be material or not, the trial court found to the contrary and the finding is supported by the evidence. The building contained four flats, of which one was rented and occupied

by the plaintiff, and the others were unoccupied. She was entrusted by the owner with the keys of the building, showed the unrented flats to prospective tenants and rented them, and, according to her testimony, was in immediate charge of the building with authority to keep trespassers out. She also testifies that when the city's employees came to the building she telephoned to the daughter of the owner, who had full authority, and received from her authority to stop the going on of the work. This testimony was certainly sufficient to sustain the finding mentioned.

Judgment affirmed.

Shaw, J., Sloane, J., Angellotti, C. J., Wilbur, J., Lawlor, J., and Lennon, J., concurred.