[Civ. No. 4657.   First Appellate District, Division One.—February 21, 1924.]

## CARL A. MUEHLEBACH, Appellant, v. PASO ROBLES SPRINGS HOTEL (a Corporation), Respondent.

[1] INNKEEPERS — PROPERTY OF GUEST — MEASURE OF LIABILITY.—By the amendment of 1895 to sections 1859 and 1860 of the Civil Code, the strict rule of the common law, which declares that an innkeeper is an insurer of the property of his guest, has been changed in this state, and, as now stated in section 1859, the liability of an innkeeper is that of a depositary for hire; and as to such liability the provisions contained in the proviso attached to section 1859, and likewise the provisions of section 1860, are but modifications or limitations of the new rule.

[2] ID.—LIABILITY OF DEPOSITARY FOR HIRE.—A depositary for hire must use at least ordinary care for the preservation of the thing deposited.

[3] ID.—SCOPE OF EMPLOYMENT—DEFINITION.—The term "scope" or "course of employment" is not capable of precise definition; and the question of what is within and what is without the "scope" or "course of employment," what is and what is not an independent tort of the servant, cannot be referred to any very definite rule.

[4] ID.—DUTY OF MASTER—VIOLATION BY SERVANT—LIABILITY.—If a duty of the master be violated, he is liable alike whether he or his servant was guilty of the breach, and this is so even though the servant acted contrary to instructions, without his master's consent fraudulently or criminally.

[5] ID.—WRONGS OF AGENT—LIABILITY OF PRINCIPAL.—A principal is liable to third parties not only for the negligence of its agents in the transaction of the business of the agency, but likewise for the torts or other wrongful acts committed by such agent in and as part of the transaction of such business.

[6] ID.—THEFT BY CLERK—LIABILITY OF INNKEEPER.—Where, pursuant to instructions posted in his room, a guest at a hotel delivers his jewelry to the innkeeper, through the clerk employed for that purpose, for safekeeping to be deposited in the safe of the innkeeper, and the said clerk thereupon so deposits said personal property in said safe, but thereafter he wrongfully converts the said personal property to his own use and absconds therewith, the innkeeper is liable to the guest for the tortious act of his (the innkeeper's) servant.

[7] ID.—BUSINESS OF PRINCIPAL—LIABILITY FOR WRONGS—CODE SECTION INAPPLICABLE.—Whatever bearing section 1860 of the Civil Code may have upon the innkeeper's liability as a bailee or depositary for hire, the statute was never intended to, nor does it, exempt the innkeeper from liability to third persons for his own wrongs or the wrongs of his servant committed in and as a part of the transaction of the business of the principal.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Daniel C. Deasy, Judge. Reversed.

The facts are stated in the opinion of the court.

Byrne & Lamson for Appellant.

H. S. Young and F. A. Denicke for Respondent.

ST. SURE, J.—This is an action by a guest against an innkeeper to recover damages in the sum of two thousand

one hundred dollars, the alleged value of jewelry deposited for safekeeping, stolen by innkeeper's servant who was specially entrusted with the care and safeguarding of the property.

The complaint contains three counts: The first charges defendant with conversion; the second charges defendant with employing a dishonest clerk who wrongfully converted the property to his own use, and the third charges that defendant undertook to keep the property safely, guaranteed the honesty of the servant, and was guilty of gross negligence in the premises. The answer denied these charges. Trial was had before the superior court without a jury. The trial court found, in part, as follows:

That on or about the first day of March, 1920, plaintiff was the owner of and entitled to the possession of certain personal property (jewelry described).

That on or about March 1, 1920, plaintiff was a guest of said defendant at the hotel conducted and operated by it at Paso Robles, California; that in a conspicuous place in the room which he occupied and to which he was assigned in said hotel by the said defendant was posted by the said defendant a sign in the words following, to wit: "The management of this hotel has provided a safe for the protection of guests and will not be responsible for any valuables unless deposited therein," and that pursuant to said notice plaintiff delivered said personal property to said defendant through the clerk employed for that purpose for safekeeping to be deposited in said safe, and the said clerk thereupon so deposited said personal property in said safe.

That said defendant employed one Charles E. Ingersoll, to whom it entrusted, among other duties, the duty of safeguarding personal property deposited in said safe. That said employee was given the key to said safe and had access thereto and to the personal property placed in the same; that it was the duty of the said employee to safeguard said personal property by keeping same in said safe, and to deliver the same to the plaintiff upon demand; that said personal property was, on the third day of March, 1920, taken from said safe by Charles E. Ingersoll, the said clerk employed by said defendant, and placed in charge of said safe with access thereto, who thereupon wrongfully converted the said personal property to his own use and absconded

therewith; that the whereabouts of the said Charles E. Ingersoll is now and ever since said March 3, 1920, unknown to this defendant; that said property has never been returned to this defendant and this defendant has never had possession thereof since the same was so taken from said safe as aforesaid.

That prior to the commencement of this action plaintiff demanded of said defendant the return of said personal property, but that said defendant not having the same was unable and failed to deliver possession thereof or any portion thereof to plaintiff.

These findings are supported by undisputed evidence. The trial court further found that defendant did not convert said property to its own use; that plaintiff had not been deprived of said personal property by the gross or any carelessness, or gross or any negligence or any improper conduct of the defendant. The court made no finding relative to the value of the property.

Upon such findings the trial court gave judgment in favor of the defendant and against the plaintiff for costs of suit. Plaintiff appeals from the judgment.

Counsel for appellant says in the "foreword" of his opening brief that the first question presented to this court for decision is: "Does the purported restriction of the innkeeper's liability by section 1860 of the Civil Code apply only to the innkeeper's common law insurer's liability, or does it protect the innkeeper from the torts of his employees acting in the course of their employment?"

Argument presented in the briefs shows some confusion in the minds of counsel relative to the liability of an innkeeper for the loss of valuables deposited in a hotel safe. It therefore seems necessary to refer to the common-law rule and also the history and effect of the legislation upon the subject in this state. In 1850 our supreme court, in *Mateer* v. *Brown*, 1 Cal. 221 [52 Am. Dec. 303], said: "An innkeeper, like a common carrier, is an insurer of the goods of his guests, and is bound to keep them safe from burglars and robbers without as well as from thieves from within his house; but he can be held to this strict liability only for such goods as are brought into his house by travelers in the character of guests." In *Pinkerton* v. *Woodward*, 33 Cal. 557, 600 [91 Am. Dec. 657], the supreme court said:

"But the preponderating weight of authority, from the time
of the decision in *Calye's Case,* 8 Coke, 32, to the present
time, is in favor of the rule that he [innkeeper] is liable
as an insurer." In *Wilkins* v. *Earle,* 44 N. Y. 172 [4 Am.
Rep. 655], the court said: "His liability extends to wearing
apparel, jewelry, money, and even to the horses, wheat,
butter and other articles of bulk belonging to the guest,
if received by the innkeeper into his care, and within his
place of entertainment. This is the rule of the common law,
enforced in the days of Lord Coke, and long prior and ever
since, as well in England as in this state." (*Churchill* v.
*Pacific Iimprovement Co.,* 96 Cal. 490 [31 Pac. 560].)

When the California codes were adopted on March 21,
1872, the Civil Code contained, as it does now, an article
entitled "Innkeepers." Section 1859 then read: "An inn-
keeper is liable for all losses of or injuries to personal prop-
erty placed by his guests under his care, unless occasioned
by an irresistible superhuman cause, by a public enemy, by
the negligence of the owner, or by the act of someone whom
he brought into the inn." In construing this statute, in
*Churchill* v. *Pacific Improvement Co.,* 96 Cal. 490, 492 [31
Pac. 560, 561], the supreme court said: "The rule stated
in section 1859 is simply declaratory of the common law."

As originally enacted section 1860 read: "If an innkeeper
keeps a fireproof safe, and gives notice to a guest, either
personally or by putting up a printed notice in a prominent
place in the room occupied by the guest, that he keeps such
a safe and will not be liable for money, jewelry, documents
or other articles of unusual value and small compass unless
placed therein, he is not liable, except so far as his own acts
contribute thereto, for any loss of or injury to such articles
if not deposited with him and not required by the guest
for personal use."

In Deering's Annotated Codes and Statutes (Civ. Code,
1886) we find the following code commissioner's note
under section 1860 of the Civil Code as it appears in its
original form: "This section affords an opportunity for inn-
keepers by their own acts, to relieve themselves to a certain
extent from what might be termed the extreme stringency
of the rule in the text of the preceding section (section
1859), and from the rigor with which it was always en-
forced as seen from the decisions quoted there. This means

of defense is afforded by and rests alone in the statute. The cases of *Purvis* v. *Coleman,* 1 Bosw. 321, 21 N. Y. 110, and *Gile* v. *Libby,* 36 Barb. (N. Y.) 70, are on this point.''

Both of these sections, as originally enacted, are based upon sections of Field's Draft, Civil Code, and the citations contained in the code commissioner's note are early New York decisions construing the New York law of 1855 (Laws 1855, c. 421), entitled: "An Act to Regulate the Liability of Hotel Keepers," which law contains provisions somewhat similar to those contained in section 1860 of our Civil Code. In passing upon the law of 1855, the New York court of appeals, in *Wilkins* v. *Earle,* 44 N. Y. 179 [4 Am. Rep. 655], says: "The rigorous rule of the common law has been to some extent modified in this state by statute. A proprietor of a hotel may now provide a safe to be kept at the office, and notify his guests of the fact and that they may deposit their money, jewels or ornaments therein by posting a notice in the room of the guest, and his neglect to deposit such articles relieves the proprietor from liability for loss." This provision of the New York law still exists in an amended form in section 200, General Business Law; Consolidated Laws, chapter 201 (Birdseye C. & G. Consolidated Laws of New York), and it is well to keep in mind that the New York statutes do not purport to create the fundamental law or even to declare it, but they assume the strict rule of the common law; nor have the New York statutes changed or attempted to change the common-law liability of the innkeeper.

The legislature of California amended both sections 1859 and 1860, and both amendments went into effect March 12, 1895 (Stats. 1895, p. 49). Section 1859 was amended to read as follows: "The liability of an innkeeper . . . for losses of or injuries to personal property other than money, placed by his guests, . . . under his care, is that of a depositary for hire; provided, however, that in no case shall such liability exceed the sum of one hundred dollars for each trunk and its contents, fifty dollars for each box, bundle and package and contents so placed under his care, unless he shall have consented in writing with the owner thereof to assume a greater liability.''

Section 1860 was amended to read: "If an innkeeper . . . keeps a fireproof safe and gives notice to a guest . . . either

personally or by putting a printed notice in a prominent place in the office or room occupied by the guest . . . that he keeps such a safe and will not be liable for money, jewelry, documents or other articles of unusual value and small compass unless placed therein, he is not liable except so far as his own act shall contribute thereto, for any loss of or injury to such articles if not deposited with him to be placed therein, nor in any case more than the sum of two hundred and fifty dollars for any or all such property of an individual guest unless he shall have given a receipt in writing therefor to such guest.''

Both sections 1859 and 1860 were again amended in 1921 (Stats. 1921, p. 149), but the text, so far as concerns the basic liability of innkeepers, remains unchanged.

[1] It is quite clear that by the amendment of 1895 the strict rule of the common law, which declares that an innkeeper is an insurer of the property of his guest, has been changed in this state, and that, as now stated in section 1859, the liability of an innkeeper is that of a depositary for hire. And as to such liability the provisions contained in the proviso attached to section 1859, and likewise the provisions of section 1860, are but modifications or limitations of the new rule.

Admittedly, then, under the facts and the law, the respondent here became a bailee or depositary for hire. [2] A depositary for hire must use at least ordinary care for the preservation of the thing deposited (sec. 1852, Civ. Code). The question of negligence of respondent in the hiring of clerk Ingersoll is disposed of by the trial court's negative finding in that regard, which finding is not attacked on appeal. This brings us to the crucial point, the one upon which the decision in this case must turn. Appellant presents the proposition in this wise:

''If he [respondent] puts a servant in charge of the property and delegates to that servant the duty of keeping the property locked up and of safeguarding it, and delegates to him the duty 'to take care of those boxes and see that nobody gets in there' (Tr., fols. 112–114), and that servant then steals the property himself, thereby breaching the master's duty which has been delegated to him, it necessarily follows as a legal conclusion that the master is liable under

the doctrine of *respondeat superior* as set forth in section 2338 of our Civil Code.''

It is respondent's contention that ''it is settled law that a master is not liable for the willful or malicious torts of a servant because: a servant so acting 'steps aside' from his employment, performing an act for his own gain and not related to the employment.''

[3] In the briefs of respective counsel, particularly in the authorities cited therein, there is much discussion and argument as to the meaning of the term "scope" or "course of employment." It would seem that the term is not capable of precise definition, although many attempts have been made to define it. The question of what is within and what is without the "scope" or "course of employment," what is and what is not an independent tort of the servant, cannot be referred to any very definite rule.

The facts in the case at bar relative to the point under discussion are, as shown by the findings, clear and undisputed. [4] They bring this case fairly within the rule of those cases holding that if a duty of the master be violated, he is liable alike whether he or his servant was guilty of the breach, and this, it appears, is so even though the servant acted contrary to instructions, without his master's consent fraudulently or criminally. ''The rule is based on the fact that as to the particular transaction the agent had exceeded his authority, actual or apparent. Whether in doing so the agent has been guilty of a breach of faith with his principal, or has committed a crime, is of no controlling moment as affecting the responsibility of the principal to third persons injured thereby.'' (*Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 40 [41 L. R. A. (N. S.) 529, 124 Pac. 704, 708].)

Respondent cites the following California cases as supporting his contention: *Hunt* v. *Walsh,* 120 Cal. 46 [39 L. R. A. 697, 52 Pac. 115]; *Rahmel* v. *Lehndorff,* 142 Cal. 681 [100 Am. St. Rep. 154, 65 L. R. A. 88, 76 Pac. 659]; *Riordan* v. *Gas Consumers' Assn.,* 4 Cal. App. 639 [88 Pac. 809]; *Baker* v. *Kinsey,* 38 Cal. 631 [99 Am. Dec. 438]; *Hopkins* v. *Western Pac. R. R. Co.,* 50 Cal. 190; *Stephenson* v. *Southern Pac. Co.,* 93 Cal. 558 [27 Am. St. Rep. 223, 15 L. R. A. 475, 29 Pac. 234]; *Copelin* v. *Berlin Dye Works & Laundry Co.,* 168 Cal. 715 [L. R. A. 1915C, 712, 144 Pac. 961].

In *Hunt* v. *Walsh* the supreme court was considering the act of an agent to whom an executed note and mortgage had been left for delivery. The agent altered the figures evidencing the principal sum and the rate of interest. The court held that the agent was a mere bailee for delivery. The supreme court mentions this case in *Otis Elevator Co.* v. *First Nat. Bank, supra,* and says that "it is not at all in point in this matter." In *Rahmel* v. *Lehndorff* it was held that an innkeeper was not liable for an assault and battery committed by a waiter in a dining-room upon one of his guests. This case is distinguished in *Ruppe* v. *City of Los Angeles,* 186 Cal. 400, 403 [199 Pac. 496, 497], where the supreme court says: "Something, perhaps, should also be said as to the statement in the second sentence quoted from *Rahmel* v. *Lehndorff,* that 'the wrongful act must be one which the servant is empowered under some circumstances to do.' If this be taken to mean that the act must be one which the servant is authorized in some circumstances to do, the statement is undoubtedly too narrow." A simple illustration is given, and the court goes on to say: "In other words, while the master has not empowered the servant to break the law in the sense that he has authorized him to do so, he has empowered him in the sense that he has entrusted him with the performance of a duty in whose performance it is possible for him to break the law." In *Riordan* v. *Gas Consumers' Assn.,* the district court of appeal, at page 643 of 4 Cal. App. (88 Pac. 811), uses this very significant language: "The question generally is whether the servant at the very time of the alleged act of negligence, had departed from his employment, or whether he departed from or neglected a duty in the line of his employment. In the first case the principal is not responsible for the servant's acts, and in the second case he is responsible." In *Baker* v. *Kinsey* the court held that an action to recover damages for the bite of a vicious dog belonging to the toll-keeper cannot be maintained against the owner of the bridge if it appears that the defendant did not keep or harbor the dog in person, and did not authorize or require him to be kept, and did not know that the dog should be kept for the conduct or protection of the business in which the owner of the dog was employed. *Hopkins* v. *Western Pac. R. R. Co.* was an action for damages for construction of a railroad. In the syllabus

to the decision appears this statement: "A railroad company is not responsible for the acts of its employee in creating a nuisance by using a culvert under its railroad near the residence of plaintiff for the purpose of a privy." *Stephenson* v. *Southern Pac. Co.* was a case where an engineer backed his engine toward a street-car crossing the railroad track with the simple intent to frighten passengers on the street-car. A frightened passenger, believing herself in danger, jumped from the street-car and was injured. Held, that the act of the engineer was not done in the scope of his employment. In *Copelin* v. *Berlin Dye Works & Laundry Co.*, jewelry was left in a suit of clothes delivered to the driver of one of the defendant's wagons for the purpose of having the clothes cleaned. The jewelry disappeared. It was held that the cleaning company was not chargeable as an involuntary or gratuitous bailee so as to be liable for the theft of the jewelry. The court pointed out that the cleaning company assumed no duty of safekeeping the jewelry and delegated no such duty to its servants, and hence the court held that the theft was not within the scope of the employment.

Respondent also cites a number of cases from other jurisdictions. We will review only the leading ones. *Merchants' Nat. Bank* v. *Guilmartin,* 88 Ga. 797 [17 L. R. A. 322, 15 S. E. 831], was a case involving the question of whether a bank was liable for a theft of a safe deposit by a cashier. It was a gratuitous bailment. The bailee owed only a slight degree of care to the bailor. Apparently the cashier of such a deposit was not entrusted with the property or charged with any such duty in respect to it, for the court said: "The cashier had nothing to do about it except suffer it to remain in a safe place of deposit." As some of the authorities put it, he had *access* to it but was not *entrusted* with it. Therefore the principal was not liable. The court further said upon the degree of care: "The law, as disclosed by the authorities, seems to consider that in the case of a gratuitous special deposit there is consideration enough in the bare custody of the property to insure its being kept without gross negligence, but not enough to bind the bank as an absolute insurer of its servants' honesty."

*Foster* v. *Essex Bank,* 17 Mass. 478 [9 Am. Dec. 168], was another case of gratuitous bailment. It was held that the

bank was not liable for stolen goods where due care has been used. The deposit was kept under the supervision of the depositor, he having the key.

*Davis* v. *Hotel Chelsea*, 186 N. Y. Supp. 75, was a case where a hotel clerk stole valuables, and it was held that there was no showing of negligent employment by the master. The facts stated in the opinion of the court show that the chief clerk was not in the hotel at the time of the theft and "that the clerk who did the stealing had no key to either the safe or the inside compartment" and there was no negligence "in view of the uncontradicted testimony that said clerk had no keys whatever to the safe."

The case of *Firemen's Fund Ins. Co.* v. *Schreiber*, 150 Wis. 42 [Ann. Cas. 1913E, 823, 45 L. R. A. (N. S.) 314, 135 N. W. 507], is interesting. The opinion was given by a divided court, four to three. The main opinion denied the liability for damage to an automobile taken out by an employee after he had left work for the day, upon the ground that he was not acting within the scope of his employment. In the main and dissenting opinions numerous authorities are quoted and discussed upon the subject of the master's liability for the servant's wrong done in the course or period of his employment. The majority opinion seems to indicate that the rule adopted by our supreme court in *Otis Elevator Co.* v. *First Nat. Bank of San Francisco*, 163 Cal. 31 [41 L. R. A. (N. S.) 529, 124 Pac. 704], *Kohn* v. *Sacramento Electric, Gas & Ry. Co.*, 168 Cal. 1 [141 Pac. 626], *Johnson* v. *Monson*, 183 Cal. 149 [190 Pac. 635], and *Ruppe* v. *Los Angeles*, 186 Cal. 400, 402 [199 Pac. 496], is not deemed applicable to the facts under consideration. But in discussing *Merchants' Nat. Bank* v. *Guilmartin, supra*, the court says: "The idea of absolute responsibility for the act of a servant, as if done by the master, or liability at all, *except based on some fault as regards trusting the bailment to the control of the servant* . . . was repudiated. . . . The court held, for liability, the wrongful act must be attributable to some negligence of the master or some negligence *or some other fault of the servant in doing the act the master employed him to do.*"

In the vigorous dissenting opinion is found this language by Mr. Justice Kerwin: "No one would claim but that the bailee would himself be liable had he done the acts com-

plained of here, and it is settled in this state and many others, and is not disputed in the majority opinion, as I understand it, that the agent when charged by the bailee with the duty of protecting property, stands in the place of the bailee and his acts are chargeable to bailee.'' (Citing authorities from Wisconsin, North Carolina, Illinois, Maine, Alabama, Indiana, Massachusetts, Mississippi, Tennessee, New York, Minnesota, Texas, and Ohio.)

The facts in all of the cases cited by respondent are wholly different from the facts in the instant case. It might well be argued that none of them called for the application of the doctrine of agency followed in this state. None of them contained such a showing as this (quoting from the finding of the trial court): ''That said defendant employed one Charles E. Ingersoll to whom it entrusted among other duties the duty of safeguarding property deposited in its safe; that said employee was given a key to said safe; and had access thereto and to the personal property placed in the same; that it was the duty of said employee to safeguard said personal property by keeping same in safe, and of delivering the same to the plaintiff upon demand.''

[5] A principal is liable to third parties not only for the negligence of its agents in the transaction of the business of the agency, but likewise for the torts, or other wrongful acts committed by such agent in and as part of the transaction of such business. This statement is a paraphrase of section 2338 of our Civil Code, which reads: ''Unless required by or under the authority of law to employ that particular agent, a principal is responsible to third persons for the negligence of his agent in the transaction of the business of the agency, including wrongful acts committed by such agent in and as a part of the transaction of such business, and for his willful omission to fulfill the obligations of the principal.''

In *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 39 [41 L. R. A. (N. S.) 529, 124 Pac. 704, 707], it was the duty of the agent to do the banking for his principal, that is, to deposit checks and cash checks for him and to make out checks and to present them to him for his signature. The agent forged checks and cashed them at the bank. It was held that the principal was liable to third parties for the act of the agent. The court said: ''It is the general

doctrine of the law, as it is our statutory rule, that a principal is liable to third parties not only for the negligence of his agent in the transaction of the business of the agency, but likewise for the frauds, torts or other wrongful acts committed by such agent in and as part of the transaction of such business. (Story on Agency, sec. 452; Shearman and Redfield on Negligence, sec. 65; Civ. Code, sec. 2338.) After declaring this to be the rule, Story says: 'In all such cases the rule applies *respondeat superior'*; and it is founded upon public policy and convenience, for in no other way could there be any safety to third parties in dealings either directly with the principal or indirectly through the instrumentality of agents. In every case the principal holds out the agent as competent and fitted to be trusted; and thereby, in effect, he warrants his fidelity and good conduct in all matters within the scope of his agency.''

In *Kohn* v. *Sacramento Electric, Gas & Ry. Co.*, 168 Cal. 1 [141 Pac. 626], the doctrine of estoppel was invoked. A case where bonds of a corporation, secured by a trust mortgage, each on its face being made payable to bearer and bearing the certificate of the trustee that it was one of the series of bonds secured by such mortgage, were feloniously taken by an officer of the trustee and pledged for his individual purposes, while the same were in the custody of the trustee upon a special trust. Our supreme court cited the case of *National Safe Deposit etc. Co.* v. *Hibbs*, 229 U. S. 391 [57 L. Ed. 1241, 33 Sup. Ct. Rep. 818, see, also, Rose's U. S. Notes], and quoted with approval the following language from the opinion delivered by Mr. Justice Day: ''The qualification of the rule, as not applying when the instrument is stolen, is not based upon the name of the agent's crime, but upon the fact that, in the ordinary and typical case of theft, the owner has not entrusted the agent with the document, and therefore is not considered to have done enough to be estopped as against a purchaser in good faith. He certainly has not done enough if the estoppel is based upon the principle that, when one of two innocent purchasers is to suffer, the sufferer should be the one whose confidence put into the hands of the wrongdoer the means of doing the wrong. But in the case like the present the agent has been entrusted with the converted property, and it is totally immaterial whether, by a stretch which extends largely

beyond the true field of trespass, his wrong has been brought within the criminal law or not. The ground of the estoppel is present, and the estoppel arises. The distinction is not new. On the one side are cases like *Knox* v. *Eden Musee American Co.*, 148 N. Y. 441 [51 Am. St. Rep. 700, 31 L. R. A. 779, 42 N. E. 988], where an agent or servant simply had access to a document remaining in the possession of the owner; on the other, cases like *Pennsylvania R. R. Co.'s Appeal*, 86 Pa. 80, where possession is entrusted to the agent for one purpose and he uses it for another. It cannot matter in the latter class that the agent intended the fraud from the outset."

Again, the doctrine of estoppel was applied by our supreme court in *Green* v. *Caribou Oil Mining Co.*, 179 Cal. 787 [178 Pac. 950], a case where a secretary of a corporation who was the transfer officer of stock and who was entrusted with the duty of issuing valid stock certificates forged and issued certain stock certificates for his own private gain. The corporation was held liable for damages, and the court said, in speaking of the case of *Havens* v. *Bank of Tarboro*, 132 N. C. 214 [95 Am. St. Rep. 627, 43 S. E. 639], and after citing that case with approval: "It was added that where the secretary issued the certificate and delivered it to a third party who acted without knowledge and in good faith, paying value for it, such party had the right to act upon the presumption that the representations of such certificate were truthful and not false and fraudulent, and the company having confided to him the trust of executing the business, the agent was held out to the public as competent, faithful and worthy of confidence; and that though he deceived both his principal and the public by forging and issuing false certificates, it is but reasonable that the principal who placed him in the position to perpetrate the wrong should suffer the loss."

*Johnson* v. *Monson*, 183 Cal. 149, 151 [190 Pac. 635], cites *Otis Elevator Co.* v. *First Nat. Bank, supra*, with approval, as does also the recent case of *Ruppe* v. *City of Los Angeles*, 186 Cal. 400, 402 [199 Pac. 496]. Quoting from the opinion in the latter case: "The rule is elementary that a master is responsible for the acts of his servant done in the course of his employment, even though those acts be unauthorized or contrary to the master's explicit instructions.

As between the master and third persons, the acts of the servant done as a part of the doing of that which he is employed to do are as if done by the master himself, and the question of authority as between the master and servant to do the particular acts is quite immaterial. (2 Cooley on Torts, 3d ed., pp. 1016–1030; Civ. Code, sec. 2338; *Rounds* v. *Delaware etc. Co.,* 64 N. Y. 129 [21 Am. Rep. 597]; *Otis Elevator Co.* v. *First Nat. Bank,* 163 Cal. 31, 39 [41 L. R. A. (N. S.) 529, 124 Pac. 704]; *Johnson* v. *Monson,* 183 Cal. 149 [190 Pac. 635].)''

[6] Further discussion or citation of authority seems unnecessary. We are convinced, under the findings and the law, that the respondent in the instant case is clearly liable for the tortious act of its servant. We do not wish to be understood as construing section 1860 of the Civil Code or interpreting its language. [7] However, we will say in passing that we think it is obvious, whatever bearing said section may have upon the innkeeper's liability as a bailee or depositary for hire, the statute was never intended to, nor does it, exempt the innkeeper from liability to third persons for his own wrongs or the wrongs of his servant committed in and as a part of the transaction of the business of the principal.

At the risk of becoming tiresome we reiterate that our conclusion herein is reached by applying the law as we find it to the particular facts of the case.

The judgment is reversed.

Tyler, P. J., and Short, J., *pro tem.,* concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 21, 1924.

All the Justices concurred.