[Civ. No. 6891.   Third Dist.   Aug. 28, 1943.]

PROVIDENCE WASHINGTON INSURANCE COMPANY (a Corporation), Appellant, v. HOTEL MARYSVILLE, INC. (a Corporation), Respondent.

Justin M. Jacobs, Loyd E. Hewitt, Warren A. Palmer, W. H. Orrick and Orrick, Dahlquist, Neff & Herrington for Appellant.

Rich & Weis and Richard H. Fuidge for Respondent.

ADAMS, P. J.—Plaintiff, insurance carrier for Measer-Straus Co., brought this action, seeking to recover the value of certain jewelry owned by Measer-Straus Co. which Leo R. Straus, vice president of said company, had taken with him on a selling trip, contained in two valises or cases which were lost while said Straus was a guest at Hotel Marysville.

The evidence shows that Straus registered as a guest at said hotel about 6:45 p. m. on November 20, 1939. He had with him in his automobile three pieces of luggage in the nature of valises, two of which were sample cases weighing from 25 to 30 pounds each, which, he testified, contained jewelry and precious stones of large value. Straus delivered his baggage to Malone, the bellboy on duty, who asked him

if he desired the sample cases placed in the vault. On being advised in the affirmative, Malone gave to Straus two brass checks numbered 31 and 41, bearing also the words, "Marysville Hotel, Marysville, Cal.," and attached the duplicates to said cases which were then placed in the vault of the hotel. Said brass checks were similar to baggage checks in use generally throughout the land in the ordinary course of checking miscellaneous items of personal property, and were commonly used by Hotel Marysville for that purpose. After delivering his baggage to Malone, Straus registered with the clerk of the hotel but did not state to the clerk or to Malone or to anyone else, either directly or indirectly, that the cases were other than ordinary baggage. Malone had seen Straus on two or three previous occasions as a guest in the hotel, but did not know his name or occupation. He testified that from the appearance of the cases he had assumed them to be sample cases, and Straus a jewelry salesman, though he was not so informed.

On the morning of November 21, about 9:15 o'clock, Straus presented the brass checks to the bellboy on duty, asking him to bring the cases from the vault; but they were missing and were not thereafter found.

Plaintiff's complaint is in two counts. In the first it is alleged that defendants engaged in the business of depositaries for hire and maintained a vault and safe deposit boxes for use in connection with their business; that Straus deposited with defendants, as depositaries for hire, two jewelry telescope cases, and 2,971 rings, including precious stones, to be stored for safekeeping; that at the time said cases were so delivered to defendants they *were informed and knew* that said cases contained valuable jewelry and accepted said cases *and jewelry* for deposit, and gave to Straus two "receipts in writing" therefor. The reasonable value of the cases and jewelry is alleged to be $40,112.42.

In the second count it is alleged that defendants maintained a vault and safety deposit boxes and that they gave a notice to guests that they would not be liable for money, jewelry, etc., if not deposited with the proprietor to be placed therein, nor in any case for more than $250 unless they had "given a receipt in writing therefor." Then follow allegations similar to those in the first count as to the deposit of the cases by Straus, that defendants were *informed and knew* that they contained valuable jewelry, and that defendants gave Straus

two instruments in writing therefor, to wit, the two brass checks hereinbefore described. It is further alleged that defendants by their conduct "represented to Straus that defendants intended said receipts in writing to be receipts in writing for said two jeweler's telescope cases and the rings therein contained"; and that in reliance upon said representation Straus left the cases and rings in the possession of defendants.

The action was tried before the court sitting without a jury upon the complaint of plaintiff and the answer of defendant Hotel Marysville, Inc., findings of fact and conclusions of law were filed, and thereafter judgment rendered for plaintiff, as the assignee of Measer-Straus Co., in the sum of $100—$50 for each of the two lost cases. The court found that defendant maintained a vault and safety deposit boxes for use in connection with its business and gave notice to guests that it kept a fireproof safe and would not be liable for money, jewelry, documents, furs, fur coats and fur garments or other articles of unusual value and small compass unless placed therein, etc.; that defendant had a large number of safe deposit boxes but that Straus did not rent any of them; that Straus delivered the two valises to the bellboy, Malone, who asked if he desired them placed in the vault, and, on being answered in the affirmative, placed them in the vault and gave Straus the two brass checks; that at no time did Straus make any statement to the bellboy or to anyone else, directly or indirectly, that the valises were other than ordinary baggage; that there was no evidence that when Straus gave his valises to the bellboy he intended the deposit to be received and cared for other than in the usual and ordinary manner concerning ordinary luggage; and that until after the loss was discovered defendant was not informed by Straus, nor did it have reason to know, that said valises and contents were other than ordinary baggage or were of a value in excess of $50 each; and that defendant did not, by word or conduct, make any statement or representation whatsoever to Straus or to anyone in his behalf, with reference to the two brass checks; that defendant stored in its vault books and properties of its own, and kept said two valises and contents under similar circumstances, and used ordinary care for the preservation and safety thereof, and that said property was not taken by defendant or by any of its employees; that on at least one prior occasion Straus had been in the vault

maintained by the hotel and was aware of the fact that during certain business hours it was the custom of the hotel to allow the doors of same to remain open. It was also found that the valises contained approximately 75 per cent of the stock of merchandise of Measer-Straus Co., a larger proportion than Straus had ever carried before, that on May 15, 1939, that company had procured from plaintiff insurance in the amount of $25,000, but that the travel limit thereon had, by an endorsement on November 16th, been increased to $35,000 for fifteen days; that plaintiff insurance carrier had paid to Measer-Straus Co. the amount of its liability for said loss, to wit, the sum of $30,624.94, and that plaintiff had been subrogated to the rights of said Measer-Straus Co.

However, the court further found that defendant did not consent in writing, or otherwise, with Straus to assume a greater liability than that prescribed by section 1859 of the Civil Code, nor did it give Straus a receipt in writing for the two valises or their contents; that from the evidence the matter was covered by the provisions of said section 1859 and not by those of section 1860 of the Civil Code; and that if the latter section were to govern, the conduct of Straus would preclude any recovery.

On this appeal, if we understand appellant's contentions, they are that the provisions of section 1859 of the Civil Code do not apply to the case, but that it should have been decided under the provisions of section 1860 thereof, that the burden of proof was upon defendant to establish its freedom from negligence, and that it did not meet that burden. Section 1859 of the Civil Code provides that the liability of a hotel-keeper for losses of personal property is that of a depositary for hire; but it is provided that in no case shall his liability exceed $50 for each valise or traveling bag and its contents unless he shall have consented in writing with the owner thereof to assume a greater liability. Section 1860 provides that if a hotel-keeper keeps a fireproof safe and gives notice to a guest that he keeps such safe and will not be liable for money, jewelry, documents, furs, fur coats and fur garments, or other articles of unusual value and small compass unless placed therein, he is not liable, except so far as his own acts shall contribute thereto, for any loss of such articles if not deposited with him to be placed therein, nor in any case for more than $250 for any and all such property of any indi-

vidual guest unless he shall have given a receipt in writing therefor to such guest.

It is said in *Meuhlebach* v. *Paso Robles Springs Hotel,* 65 Cal.App. 634, 640 [225 P. 19], that these sections have changed the strict rule of the common law that an innkeeper is an insurer of the property of his guest, and that the liability of an innkeeper is now that of a depositary for hire who must use at least ordinary care for the preservation of the thing deposited (sec. 1852 Civ. Code). And in *Baxter* v. *Shanley-Furness Co.,* 193 Cal. 558, 561 [226 P. 391], the court said, regarding sections 1859 and 1860, *supra,* that together they were intended to relieve innkeepers in this state of the burden of their common law liability; that section 1859 changed that liability from that of insurer to that of a depositary for hire as to personal property of every kind and description other than money, and, in addition, limits his liability, even though the evidence shows the innkeeper to be liable under the rule applicable to such a depositary, to fifty dollars for each valise or traveling bag and contents. It also said that section 1860 goes further than section 1859 and provides a method by which the innkeeper may relieve himself even of his liability as a depositary for hire of money, jewelry, etc., if he complies with the conditions provided therein and his guest fails to deposit such articles with him; and that as a depositary for hire under section 1859 an innkeeper is liable only when he has been guilty of some negligence, and that he is chargeable only with ordinary care and diligence in safeguarding his bailor's property (3 R.C.L. secs. 22, 23, p. 96).

It thus appears that if we apply section 1859 to this case, even though defendant may have been negligent, its liability for Straus' two cases must be limited to $50 each unless defendant consented in writing with Straus to assume a greater liability; and that if we apply section 1860, defendant was not liable at all unless (1) Straus deposited his cases with defendant to be placed in its safe, and (2) then for not more than $250 unless Straus was given a receipt in writing.

Apparently appellant's contention is that Straus met the conditions of the latter section, that he deposited his cases with defendant to be placed in its safe, and that he received therefor a "receipt in writing."

We shall consider first whether the evidence compels the

conclusion that Straus dealt with his two cases as such property as is contemplated under section 1860, and deposited them as such with defendant to be placed in its safe. The evidence shows and the court found that Straus did not at any time make known to anyone that his two cases contained anything other than ordinary baggage, nor did he request that same be placed in defendant's safe. He was purely passive in the matter, merely acceding to the inquiry of the bellboy as to whether he wanted them put in the vault, and accepting without question only the two baggage checks therefor. He did not state that they were other than ordinary luggage or that they contained jewelry or articles of unusual value. While it is alleged by plaintiff that defendants were *informed and knew* that the cases contained valuable jewelry, for proof of this allegation it relies solely upon the fact that the cases were such as are carried by jewelry salesmen, and the statement of Malone that he assumed that the cases were sample cases, and Straus a jewelry salesman. We think this was insufficient to show knowledge on defendant's part that the cases contained articles of unusual value. As every lawyer knows, the fact that one seeking access to his office carries a lawyer's brief case is no evidence that the carrier is a lawyer or that his case contains legal documents. One who seeks to impose upon an innkeeper who has given the notice provided for by section 1860, *supra,* the liability of an insurer of articles of unusual value must make known to such innkeeper in some more definite fashion than this, that his baggage contains such articles and that they are being deposited for special safe-keeping. The fact that Straus assented to the placing of the valises in the vault does not compel the inference that they contained articles of unusual value. Straus knew the "set up" as he put it, and may well have preferred that even his ordinary luggage be put in the vault rather than in the ordinary baggage room. His nonchalance alone is sufficient to support an inference that he did not consider the contents of his luggage of sufficient importance to call for greater concern on his part.

We are of the opinion that Straus' acts did not constitute depositing "money, jewelry," etc., within the meaning of section 1860, *supra.* It is said in 14 Cal.Jur. 324, that a guest may not make an innkeeper a compulsory depositary of any amount of goods or treasure which he may desire to keep secure, citing *Mateer* v. *Brown,* 1 Cal. 221; and in

*Goodwin* v. *Georgian Hotel Co.*, 197 Wash. 173 [84 P.2d 681, 119 A.L.R. 788], in construing a statute similar to our section 1860, *supra,* the court said that such statute intended to create mutual and reciprocal duties and rights between the hotel-keeper and his guests, and in that way to prescribe and maintain a fair and reasonable balance of protection to both. In *Stoll* v. *Almon C. Judd Co.*, 106 Conn. 551 [138 A. 479, 53 A.L.R. 1042], it is said that ''It is necessary and proper that the intent of the guest to deposit property for safe-keeping be brought home to the innkeeper in some reasonable and intelligible manner and that he should be given such notice of its character that he may know that it is valuable and to be safely kept and regulate the extent of his care accordingly and with a view to the liability which would attach to him in case of loss.'' In *Horton* v. *Terminal Hotel etc. Co.*, 114 Mo.App. 357 [89 S.W. 363], plaintiff, while a guest with defendant, lost a gold-filled locket containing an ivory miniature, the value of the two being alleged to be $221. The innkeeper had given notice of a safe, and that it would not be liable for loss of money or jewelry unless they were delivered to it for deposit in the safe. Plaintiff had handed a box containing the locket to the clerk, requesting him to keep it for him, but gave no notice of its contents. It was held that the hotel was at most a gratuitous bailee and was liable only for gross negligence; that it assumed no liability as an innkeeper for the reason that the article was one that, under the statute, it was plaintiff's duty to entrust to the defendant to be deposited in the hotel safe.

Under the English statutes, which require a deposit ''expressly for safekeeping,'' something more than merely handing the goods to the clerk is required. (*O'Connor* v. *Grant International Hotel Co.*, 2 Ir. R. 92—Q.B.D.; *Whitehouse* v. *Pickett,* A.C. (Eng.) 357, 12 Ann.Cas. 96—H.L.) In the latter case the plaintiff's salesman had been accustomed to stay at the defendant's hotel, whenever he was in the city, over a period of eighteen years; on these occasions he always deposited his jewelry case in a particular recess behind the bar of the hotel; but on the occasion in question he gave his case to the porter without any communication to the latter or the hotel-keeper, and it was left in its usual place. It was held that, under such circumstances, no deposit ''expressly for safe-keeping'' had been made, and that the innkeeper could not be held liable under the innkeepers' act for loss of

the jewelry. The court said, in the opinion of Lord James of Hereford: "My view is that the legislature intended that, before the innkeeper should be liable, proof should be given that he had received into his charge goods with the intention of making himself liable for their safety; that he should possess, or at any rate have opportunity of possessing, knowledge of the nature and value of the goods deposited, so that he might regulate the extent of his control over and care of them with some relation to the liability that would attach to him if the goods were lost."

As above stated, the trial court found that there was no evidence that when Straus gave the valises to the bellboy he intended the deposit to be received and cared for other than in the usual and ordinary manner concerning ordinary luggage, and that until after the loss was discovered defendant was not informed nor did it have reason to know that said valises were other than ordinary baggage. There is no evidence that Straus made any representation that his cases were jewelry cases or that they contained jewelry of great value. On the contrary, his conduct in turning them over to Malone, the bellboy, and his acceptance of only ordinary baggage checks therefor carries an implication to the contrary. We believe that where an innkeeper relieves himself of liability by giving the notice provided for by section 1860, *supra,* a guest who desires to impose liability upon him must, in some manner, bring to the notice of such innkeeper that he is doing so; and that he cannot rely upon the mere appearance of his baggage as giving information to the innkeeper that it contains jewelry, etc., and is being deposited with him as such.

We are further of the opinion that defendant did not in this case "consent in writing" to assume a greater liability than that provided for by section 1859, *supra,* nor did it give to Straus "a receipt in writing" for the jewelry contained in his cases. Appellant relies upon *Greer* v. *Los Angeles Athletic Club,* 84 Cal.App. 272 [258 P. 155], but the facts in that case are in no wise similar. There plaintiff, a member of the club and a resident at its club house, delivered to one of defendant's clerks a package containing money, for deposit in the fireproof safe which the club maintained for the safekeeping of packages deposited therein by members of or lodgers in the club house. Plaintiff's package was placed by the clerk in an envelope specially prepared for such purposes, upon which was printed: "Directions for using this en-

velope. After the depositor has placed his money or valuables in the envelope and sealed it, have him sign his name in full on check A, and then tear off and give him check B, to keep as a receipt. When he calls for his deposit, cause him to put his signature on Check B, and then compare it with that on check A; if the result is satisfactory, deliver the envelope, and date and file the two checks as receipts." The portion of the paper referred to above was delivered to the plaintiff at the time of making his deposit and was in words and figures as follows: "Check B. Date, .......... 192... Los Angeles Athletic Club. No. 304. Los Angeles, Calif. Depositor is to sign here only when he withdraws his deposit. . . . Deliverable to the owner only." The evidence shows that at the time the plaintiff deposited his package with one of the clerks in the office of the defendant there was delivered to him the above slip of paper which was detached from the envelope in which the deposit was placed. The portion of the envelope taken by plaintiff bore a number corresponding to the number on the envelope retained by the club. It was not there denied that the deposit was made especially for deposit in defendant's safe, nor was it denied that it was accepted by defendant with knowledge that it was being so deposited; defendant's contention was that no receipt was given. But the court said that the paper given to Greer was such as was prepared by the club for use by persons depositing money or valuables in the safe and was regarded and considered as a receipt by all parties to the action.

The evidence in the case before us shows that defendant used a similar envelope for deposit of articles of value by its guests, and that Straus was aware of it, and had, on at least one other occasion, deposited articles with the clerk of the hotel and received a similar receipt. However, he did not request any such receipt for his sample cases on the occasion of his visit on November 20, 1939, and because in the Greer case the printed slip given plaintiff was held to be a sufficient receipt under the circumstances of that case, it does not follow that the brass checks given to Straus under the circumstances of this case constitute or were intended to constitute receipts in writing for articles of unusual value, within the contemplation of section 1860, *supra*. If such brass checks be held to constitute receipts in writing under that section, they may, as well, be held to constitute "consent in writing" under section 1859; and to hold the latter true would, in effect, nullify

the limitation of liability provided in the latter section, and would render an innkeeper liable for the full value of any article of baggage for which such a baggage check were given, regardless of where it was placed, whether in its vault or its ordinary baggage room. Conceding, as is argued by appellant, that a baggage check is evidence of the receipt of baggage, and that "writing" is defined by section 14 of the Civil Code to include "printing and typewriting," it does not follow that the brass checks given to Straus constituted receipts in writing for jewelry deposited for safekeeping sufficient to impose liability upon defendant for the full value of the contents of Straus' valises.

In *McFarland* v. *Spengler*, 199 Cal. 147 [248 P. 521], it was held that under the election statutes permitting the voting for a candidate by writing in of such candidate's name on the ballot, a printed sticker pasted on the ballot with the candidate's name printed on the sticker was not a compliance with the requirements of the statutes. The court said that the use of the words "writing," "written in" and "written" used in the statutes evidenced an intention on the part of the Legislature to exclude other methods, that the printed pasters were not writings, etc., and that the provision of sections 16 and 17 of the Political Code to the effect that "writing includes printing and typewriting" did not apply.

In *Norris* v. *Manischewitz Broadway Cent. Hotel*, 129 Misc. 329 [221 N.Y.S. 363], a hotel-keeper accepted a guest's money belt and put it in a tin box, delivering the key to the guest stating it was his receipt. The court said this was *not a special agreement in writing* within the provisions of the applicable statute. But it said that had plaintiff informed defendant of the contents of the package and that he was depositing a sum of money in excess of $500, and the defendant had told plaintiff, upon the latter's request for a receipt, that the key was his receipt, there might have been a question for the jury to determine whether by such action defendant had waived the provision of the statute as to its responsibility beyond $500.

In the instant case the determination of questions of fact and the inferences to be drawn from the evidence were for the trial court, and being of the opinion that the evidence is sufficient to sustain the findings made, and that Straus did not make a deposit of his cases with defendant as articles of unusual value to be placed in its safe nor receive a receipt in

writing therefor, within the meaning of section 1860 of the Civil Code, it follows that plaintiff was not entitled to recover under the provisions of that section. The most that it was entitled to recover was the amount allowed by the trial court, to the allowance of which defendant interposes no objection.

The judgment is affirmed.

Peek, J., and Thompson, J., concurred.

A petition for a rehearing was denied September 22, 1943, and appellant's petition for a hearing by the Supreme Court was denied October 25, 1943. Traynor, J., and Schauer, J., voted for a hearing.